NEIL H. MAPES. ET AL., APPELLEES, V. HENRY BOLTON,
APPELLANT.

FILED SEPTEMBER 25, 1911.   No. 16,523.

1. **Waters:** OBSTRUCTION OF DRAINAGE. A lower proprietor may not unnecessarily obstruct a natural drain upon his own premises without the upper proprietor's consent, so as to collect surface water and cast it back upon his neighbor's farm where it would not appear but for that obstruction, and to the injury of his neighbor's crops and land.

2. ———: ———. Section 1, art. III, ch. 89, Comp. St. 1909, which authorizes a proprietor to drain his land by tile or open ditches so constructed as to discharge water into any depression or draw upon his own premises, does not authorize him to dam up and permanently obstruct a natural drain, so as to prevent assembled surface water from flowing therein in the natural course of drainage, and so as to injure his neighbor's crops and land.

APPEAL from the district court for Colfax county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*C. J. Phelps,* for appellant.

*W. M. Cain, contra.*

Root, J.

This is an action to enjoin the defendant from obstructing a natural drain within the boundaries of his farm. The plaintiffs prevailed, and the defendant appeals.

A public highway running north and south divides the respective farms of the plaintiffs and the defendant, which are within the valley of the Platte river. A natural drain, described as a "draw," which heads some distance northwest of the plaintiffs' farm, runs southeastward across that farm and the farm of the defendant until intercepted by a drainage ditch. The draw is $3\frac{1}{2}$ miles in length, from 20 feet to 100 feet wide, and its average depth is $2\frac{1}{2}$ feet. Several individuals whose farms are crossed by the draw have plowed its banks and bed so as to grow annual crops thereon. At other points cattails and willows grow in the draw and the native sod remains unbroken. There is some conflict in the testimony, but it fairly proves that after heavy rains the surface water from a considerable area collects in and runs off through the draw, which at times is bank-full of flowing water.

Prior to the commencement of this action the defendant and other individuals owning land northward from his farm caused a ditch to be constructed upon his farm parallel to its western boundary, and southward across the draw to another draw upon the farm, and the defendant constructed a dam across the draw first referred to, and in line with the east bank of the ditch. One civil engineer testifies that not to exceed one-half acre of the plaintiffs' farm will be overflowed should the dam back up the water flowing in the draw, while another engineer testifies that between 10 and 11 acres will be thus flooded. For the sake of argument, we may accept the testimony of the witness first referred to as the more accurate.

The defendant contends that the ditch is constructed according to an agreement between himself and his neighbors, including the plaintiffs; that he was merely protecting his premises from the ravages of surface water,

and that he has acted within the provisions of section 1, art. III, ch. 89, Comp. St. 1909. All of the witnesses testifying to the alleged contract say that nothing was said about obstructing the draw. The evidence is clear and satisfactory that the surface water from a considerable territory assembles in and flows through the depression in question. Five bridges, to accommodate public travel at points where highways cross the draw, have been constructed and are maintained by the public authorities, and one-half mile below the dam the Union Pacific Railway Company constructed and maintains a substantial bridge 15 feet in length to permit storm and flood waters to pass on in the bed of this draw.

The broad general rule that a proprietor may protect his premises from the flow of surface water has many qualifications to be considered whenever it is invoked to protect an individual from the complaint of his neighbor injured by interference with or diversion of surface water flowing in the natural course of drainage in a natural drain. In any event, the lower proprietor in excluding surface water from his premises must exercise ordinary care so as not to unnecessarily injure his neighbor. In the instant case the draw at the point of obstruction is 64 feet wide; the ditch from the draw northward is 20 feet wide, whereas from the draw southward the ditch is but 10 feet in width. We are inclined to accept the simple and unchangeable principles of mathematics and of hydraulics in coming to a conclusion that the ditch from the draw southward will not carry off the combined flood waters of the ditch to the north and of the draw, rather than to adopt opinions to the contrary given by some of the witnesses. There is no proof that it was necessary, in the exercise of good husbandry or for the purpose of protecting the defendant's premises, to prevent the ditch water from flowing eastward in the first draw, and it is plain that a sufficient way was not provided from the first draw southward for the combined waters that will flow in the draw and down the ditch from the north. In

55

our judgment, and under the circumstances of this case, it was not necessary for the defendant's protection that he should obstruct the draw, and in making his improvements he has not exercised that care which a due regard for the plaintiffs' right requires him to observe. *Chicago, R. I. & P. R. Co. v. Shaw,* 63 Neb. 380; *Flesner v. Steinbruck, ante,* p. 129. The statute, *supra,* authorizes a landowner to drain his land in the natural course of drainage by constructing tile or open ditches so as to discharge water into any depression or draw upon his own premises, but it has no application to this case. It is the dam within the natural drain, and not the ditch which the defendant assisted in digging, that damages the plaintiffs.

The judgment of the district court is right, and it is

'AFFIRMED.

SEDGWICK, J., took no part in this decision.