HENRY NAYSMITH ET AL., APPELLEES, V. CITY OF AUBURN, APPELLANT.

FILED APRIL 3, 1914. No. 17,433.

1. **Municipal Corporations: DRAINAGE: LIABILITY.** A municipal corporation has the right to improve and provide for the drainage of its streets; but if in so doing it causes an increased flow of surface water upon or against private property, and negligently fails to provide a sufficient outlet for the escape of the water thus brought upon or against such property, it will be liable to the owner thereof for any damage that may result from such negligence.

2. ———: ———: **APPEAL: FINDINGS: EVIDENCE.** Where it is alleged and evidence is introduced tending to prove a negligent or unskilful drainage of the streets by and within a municipal corporation, resulting in an overflow and damage to the property of the plaintiff, and the jury hearing the case had, by order of the court, inspected the property and the character of the alleged defective drainage of the accumulated surface water, the finding of the jury will not be disturbed unless shown to be, clearly wrong.

3. Instructions examined, and no prejudicial error found.

4. **Depositions: CORRECTION: QUESTION FOR COURT.** Where a deposition of a ·witness is taken, and it is claimed that a mistake has been

made by the stenographer in copying his notes, the proper time for the correction of the alleged mistake is by an application to the court, before the deposition is read, for permission to make such correction. The issue as to the mistake should not be submitted to the jury, thus multiplying the questions to be decided by them.

APPEAL from the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Lambert & McCarty,* for appellant.

*Quackenbush & Neal* and *Fred G. Hawxby, contra.*

REESE, C. J.

This is an action against the city of Auburn by plaintiffs, the owners of residence property in said city, for damages to real estate by the overflow of surface water, alleged to have been caused by a change of the sidewalk grade, and the imperfect and negligent drainage of the streets adjacent to the property, to the extent of overflowing of the lots upon which the residence is located, and thus impairing their value and their use as residence property. The action is based upon two allegations of the petition; one, that the dwelling-house was originally constructed with reference to and corresponding with the street as it then existed, and that by a subsequent elevation of the sidewalk in front of the premises the house and lots were caused to be at a lower level from the sidewalk, the danger from overflow increased, and the value of the property thereby reduced and impaired; the other, that the city wrongfully, negligently and unlawfully constructed a ditch or waterway along and near the lot line and a drain or ditch across the street in front of the premises by which an increased flow of water was turned upon and against said lots, but without adequate drainage for the increasd flow, and by reason whereof a large volume of surface water was thrown against and over the sidewalk space and onto the lots, to the injury of plaintiffs and damage to the property, which was used as a residence. The answer consists of a denial of unadmitted facts, and alleges, in substance, that the house was orig-

inally constructed upon low ground, below the street and sidewalk level, the top of the foundation being below the level of the street and sidewalk space; that long before the improvements of the street and sidewalk were made the property was frequently overflowed, the surface water running and collecting about the house and into the cellar thereunder; that no damage was caused to the property by anything done by the city in the way or by the means of the improvements of the street or the surface drainage; that the change of the elevation of the sidewalk was very limited in extent, and the improvements of both street and sidewalk, together with the excavation of gutters and ditches, were necessary for the benefit of the public in the use of the street as a public thoroughfare; that the same were reasonably and carefully made, and in strict accordance with the rights and duty of the city, and without damage to plaintiffs' property; that, if plaintiffs have suffered any damage by reason of the overflow of the property or the deposit of earth or debris thereon, the same has been caused by the negligence on the part of the plaintiffs by reason of the house having been built on ground lower than the grade of the street, in the natural depression thereof, without any protection or effort to prevent the natural action of the surface waters; that by the improvements of the street, as stated, the property of plaintiffs had been increased in value, and not in any way injured or the value decreased. Reply, a general denial. A jury trial was had, which resulted in a verdict in favor of plaintiffs, finding the damage to the property to be $180.75, upon which, after the motion for a new trial was overruled, a judgment was rendered. Defendant appeals.

The cause was tried on the part of each side with a high degree of care and skill, and, apparently, every proper phase of the case was presented to the jury. The same commendable care has been observed in the presentation of the cause on this appeal. However, it will not be deemed necessary to follow the discussions as contained in the briefs and oral argument, as the case may be disposed of to our

satisfaction by its examination, limiting our investigation to a few plain principles which are applicable thereto.

As we view the record, the principal lines of contention were submitted to the jury on sharply conflicting testimony. Aside from the inconvenience of access to the property by the elevation of the sidewalk space in front of the lots, the already high surface as compared with the level of the property, we are scarcely persuaded that the subject merits very much attention. The surface of the lots was below the level of the street grade established by long user. The elevation of the sidewalk, the extent of which was sharply in dispute by the witnesses, was probably, in part at least, for the protection of the property in the prevention of the overflow of the surface water onto the lots from the street, but mainly for the improvement of the street and sidewalk. In the estimation of some of the witnesses this change had an injurious effect upon the value of the property, while other witnesses were of the opinion that the two lots owned by plaintiffs were benefited thereby. On this subject the conclusion to be drawn was for the jury. In addition to the oral testimony, the jury were, by order of the court, sent to view the premises, which it is presumed they did, and by that means the actual view furnished to the jurors a line of evidence not presented to the trial court, nor to this court. While not attaching so much importance to this feature of the case, we are reminded that it may have been, and probably was, considered by the jury as a partial basis for their verdict.

As we view the case, the principal element of damage as found by the jury arose from the effort of the city to take care of surface water by a system of drainage, as to which it was claimed, and the evidence introduced tended to show, that the volume of water carried in the drains was largely increased in time of rains and melting snows, and that to such an extent as to damage plaintiffs' property. The lots are situated in the south end of the west half of the block, the west ends fronting to the west upon Sixth street, while Twelfth avenue is along the south line. There is evidence that in the construction of the drainage system

of that part of the city quite a large watershed was so ditched and drained as to carry an increased flow of surface water to the south along the west side of Sixth street until it came to a point opposite the southwest corner of plaintiffs' property, where the drain was carried across the street in a ditch under a crosswalk, where the flow of water came in contact with the drain running to the south along the east side of the street, the outlet being from there to the east along the south line of the south lot of plaintiffs' property; that this last named drain was not of sufficient capacity to meet the requirements of the two ditches, and at the point where the two came together the water accumulated in a body, and was forced over the embankment of the ditch onto plaintiffs' lots. One witness testified that "the water sometimes seemed to come with greater force from the west, evidently from the greater drainage that came across the street. It came with great force. The water also from the north backed up, and the water from the west seemed to hold that from the north, and backed it up until it came over the corner of the walk; that at the lower part or corner of the walk, the water rushed around the corner, and made an abrupt turn; that all came along the gutter so that it came around that easily, and that coming from the corner seemed to come with a rush, and as it came it swelled toward the house. Q. Would it reach the building and porch? A. It did; we could see it. Q. Tell the jury how it ran. A. It came over in a great volume, over the corner of the walk, also over the crossing, just like a little torrent, and ran over toward the house." This evidence was supported, in substance, by other witnesses, and there was evidence which tended to prove the increased drainage from the north, and the inadequacy of the ditch to the east to carry off the water, produced by the union of the two ditches from the north along the east and west side of Sixth street, where that from the west side was carried across the street and united with that coming down the east side at the corner of plaintiffs' property. True, much of this testimony was in effect contradicted by the witnesses on the part of the defense, but the solution of

the question was for the jury. Here again, the examination of the place in question by the jury, with their opportunity to observe the drainage both above and below the point of union of the two drains, places the matter beyond reach of this court, as well as of the learned judge who presided at the trial. We are unable, therefore, to say that the verdict was not sustained by sufficient evidence.

We take it that it is a well-settled principle of law that neither the owner of land nor a municipal corporation has any right to collect waters and discharge them upon the lands of another in a greater quantity than what would have reached the property by natural drainage. *Elliott v. Oil City,* 129 Pa. St. 570; *Byrnes v. City of Cohoes,* 67 N. Y. 204; 30 Am. & Eng. Ency. Law (2d ed.) 339; *Lincoln & B. H. R. Co. v. Sutherland,* 44 Neb. 526. In 10 Am. & Eng. Ency. Law (2d ed.) 243, it is said: "It is well settled according to all the authorities that, were the effect of the sewer, whatever its plan, is to cause a direct invasion of private property by collecting and throwing upon it in new channels or in increased quantities water that would not otherwise have found its way there, the corporation is liable." We can conceive no reason why the same rule should not be applied to surface drainage or surface sewers. Therefore, assuming the verdict of the jury to be sustained by sufficient evidence, which we must, we cannot say that it is contrary to law.

The deposition of a witness was taken and read in evidence by the transcript of his testimony furnished by a stenographer. It was offered to prove by the stenographer's shorthand notes that the witness had testified that at a time before the improvements were made the water had accumulated in the cellar of plaintiffs' property to the depth of three or four feet, but by the transcribed testimony the witness had used the word "inches" instead of "feet." The stenographer was called as a witness, and asked to produce his shorthand notes and testify that the notes were correct, but that in transcribing them he had inadvertently changed the word "feet" to "inches." Objection was made to the offered testimony, and the ob-

jection sustained, to which defendant excepted, and now assigns the ruling of the court as error. The proper time to have sought a correction of the deposition, if a mistake had been made in transcribing it, would have been before the trial, and we are unable to see that it would have been proper practice to present the additional issue to be tried by the jury, for the question had it been sustained, would have been for decision by them. But, in any event, we are unable to see that, had the practice proposed been correct, the error of the court, if such there were, could have worked any prejudice to defendant.

Objection is made to certain instructions given to the jury by the court, among which is the sixth, which is as follows: "You are instructed that the city is liable under the constitution of this state to lot owners for such damages as they may sustain by filling in the street in front of their lots above the level of the same, when the buildings were erected on the lot before the grade was established." While we may not be able to fully comprehend the necessity for giving this instruction, yet there is no doubt of its correctness as an abstract proposition. It has often been said that the statement of abstract propositions of law in instructions to juries is not always to be commended. The instruction is substantially a copy of the syllabus in *Harmon v. City of Omaha*, 17 Neb. 548. It is insisted that, while the doctrine is correct in a proper case, it can have no application to the one now under consideration. It is shown by the evidence that after the construction of plaintiffs' residence the sidewalk in front thereof was raised to an uncertain extent, according to the estimates of the witnesses, ranging from a very few inches to a greater height, and to that extent the instruction might be applied. It may be that at that time the street grade had been established by user, but, if so, that grade was changed in so far as the sidewalk space was concerned. We see no reversible error in giving the instruction.

The giving of instruction number 21 is assigned for error. It is as follows: "You are instructed that, if you find from all the evidence in this case that the plaintiffs

are entitled to recover, then the measure of plaintiffs' damages is the depreciation in the value of the property in controversy, which you find from the evidence in this case has been caused or occasioned by the change of the grade of said street and sidewalk, or from the change of the grade of the sidewalk alone, or by the accumulation and diversion of surface water." We are unable to see any ground for complaint in this instruction. The rule for the measurement of damages is correct and covers all the issues in the case as to what, under the issues and evidence, could have worked an injury to the property.

Objection is made to the action of the trial court in refusing to give certain instructions requested by defendant, and in giving instructions requested by plaintiff. As to those refused, we need only say that their substance is sufficiently included in those given. We are unable to detect any prejudicial or reversible error in those given. In view of their length, we must refrain from copying them here.

Finding no error which calls for a reversal of the judgment, it is

AFFIRMED.