LOUIS O. MUHLEISEN, APPELLEE, v. ARTHUR J. KRUEGER, APPELLANT.

FILED OCTOBER 31, 1930. No. 27398.

*Bernard McNeny*, for appellant.

*Charles E. Bruckman*, contra.

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK, District Judge.

DAY, J.

This is a suit in equity to enjoin the defendant from interfering with the flow of surface water upon his land from the adjoining land of the plaintiff. It appears conclusively from the record in this case that there is a low place or sag in the land that holds water after a heavy rain or melting snow at a point on the division line between the farms

of the parties to this litigation; that the defendant has threshed his grain, piling the straw therefrom in the depression on his side of the division line, and in addition thereto has put in some planks and piled the straw behind them; that the sag in question is not a natural watercourse, a creek or a draw; that to the point in controversy the plaintiff's land slopes gradually down from the crest of the hill 2,000 feet distant; that the land appears to be level and the slope so gradual and regular that the drainage of said land does not converge upon the land of the plaintiff into a depression or draw and does not run into the sag in a well-defined stream; that the drainage of the land is to the northeast upon the land of the defendant; that the survey of the plaintiff's land introduced in evidence shows that a line run from the point of the division line where the sag in question is located, except at or near the division line, has a higher altitude than similar places on the land 200 feet equidistant on either side thereof.

Upon this state of the facts the court found in substance that the plaintiff had the right to the escape of surface waters from his land in the natural course of drainage thereof, without unreasonable interference or impediment by the acts of the owner of the adjoining land, and that the defendant in maintaining a dam of straw and planks near the division line was unlawfully obstructing the natural drainage of the land. If by the words, "in the natural course of drainage," as used in the opinion of the trial court, he meant a depression or draw which constituted a watercourse, as contemplated by the law, then the evidence in the record in this case does not sustain the finding. Watercourse is defined by section 1719, Comp. St. 1922, as follows: "Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook, shall be deemed a watercourse." Whether or not water is passing in a natural drain is a question to be determined from the facts of the case. In this case there is no converging of the water into a single stream which has entered a well-defined drainage ditch. The evidence of the county surveyor, including the plat

which he prepared and which was received in evidence, absolutely negatives any contention of a natural drain or watercourse. Thus, also, does the photograph of the point of controversy from an examination of which no one could determine where the water would flow in the case of rain or melting snow; so we are forced to the conclusion in this case that we have what is called in the books, "diffused surface water," which does not converge into a natural drain.

It appears that the trial judge applied the rule of the civil law, which is: "As between the owners of higher and lower ground, the upper proprietor has an easement to have surface water flow naturally from his land onto the land of the lower proprietor, which is subject to a corresponding servitude, and hence the lower proprietor has not the right to obstruct its flow and cast the water back upon the land above; but this applies only as to water arising from natural causes, as from the falling of rain or the melting of snow, and water arising from springs and draining off without a defined channel." 40 Cyc. 640. But this rule is not the law of this state. Here, the doctrine of the common law in regard to surface waters is, with some exceptions, in force and controls. *Town v. Missouri P. R. Co.*, 50 Neb. 768. According to the common-law rule adopted by our court, no natural servitude exists in favor of the superior or higher land as to surface water, such as falls or accumulates by rain or the melting of snow. Therefore, the owner of the lower tenement may lawfully obstruct or hinder the flow of this water and in so doing hold it back or turn it off of his own land without liability therefor. 27 R. C. L. 1143, sec. 74. In the text above cited it is further explained that the gist of the rule is that one may do as he pleases with his property regardless of the effect of surface water. In *Town v. Missouri P. R. Co.*, *supra*, this court said: "Surface waters may be controlled by the owner of the land on which they fall or originate or over which they flow. He may appropriate to his own use all that falls or comes on his land and refuse to receive any that falls or originates or flows on or over adjoining pro-

perty." This is the definition of the common-law rule as adopted by this state. The court further explained the exceptions to the rule as recognized by this court, in the following language: "Surface waters may have such an accustomed flow as to have formed at a certain place a channel or course, cut in the soil by the action of the water, with well-defined banks, and having many of the distinctive attributes of a watercourse; and though there are no exceptions to the general rule except from necessity, this may constitute an exception, and if the flow is stopped by the erection of an embankment across and in the channel, some provision may be necessary for the allowance of the regular flow of the surface waters." This same doctrine was enunciated in *Jacobson v. Van Boening*, 48 Neb. 80, and *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb. 406.

In *City of Beatrice v. Leary*, 45 Neb. 149, the court stated the common-law doctrine, but laid down the exception that the proprietor may not so use his own property as to unnecessarily and negligently injure his neighbor, and that he might do what was reasonably necessary, unless he was negligent in the manner of its execution. This case involved the damming of a natural drain, a draw, by the grading and paving of a street. In *Flesner v. Steinbruck*, 89 Neb. 129, the court decided that the upper proprietor can change the course of drainage upon his own premises by the use of ditches which permit the water to flow without appreciable increase in volume upon the servient estate *in a natural drain* where it would have appeared if the ditches had not been constructed. This case is not a modification of the rule as laid down in *Town v. Missouri P. R. Co.*, *supra*, but is one of the exceptions recognized therein. The matter was before the court in *Aldritt v. Fleischauer*, 74 Neb. 66. This was another case where the owner of land drained ponds of a temporary character into a natural surface-water drain on his own property, and through this drain over the land of the lower proprietor. This case lays down the rule that natural drainage channels cannot be obstructed.

We have examined the cases cited by the appellee in this case, *Boyd v. Conklin,* 54 Mich. 583; *Aldritt v. Fleischauer,* 74 Neb. 66; *Roe v. Howard County,* 75 Neb. 448; *Flesner v. Steinbruck,* 89 Neb. 129; and *Mapes v. Bolton,* 89 Neb. 815. In all of the cases cited there was the question of putting an obstruction across a natural drainage ditch, such as a draw or a well-defined ditch. This is obviously not the situation in the instant case. We have examined the record with great care and the evidence does not disclose that the defendant is at the present time negligent in the filling up by straw and the maintaining of what is alleged to be a dam as it exists at the present time. The conditions surrounding the location in this controversy are such that the defendant under the law of this state has a right to protect himself against surface waters such as are disclosed by the record in this case running upon his land from the upper land.

The defendant might so reconstruct his dam at some future time that he would unnecessarily and without good reason damage the land of the plaintiff, but in the present state of the record we conclude that the trial court was in error in granting the injunction. The judgment of the lower court is therefore reversed and the cause dismissed.

REVERSED AND DISMISSED.