COUNTY OF SCOTTS BLUFF, STATE OF NEBRASKA, A
GOVERNMENTAL SUBDIVISION, APPELLANT, V.
PHILIPP HARTWIG ET AL., APPELLEES.

71 N. W. 2d 507

Filed July 15, 1955. No. 33687.

*Holtorf & Hansen* and *Byron M. Johnson,* for appellant.

*Neighbors & Danielson, Townsend & Youmans,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This action was brought in the district court for Scotts Bluff County. It was brought by the County of Scotts Bluff for the purpose of obtaining a mandatory injunction to compel certain parties it had made defendants therein to remove an earthen dike or embankment they had placed on their lands, which dike or embankment the county alleged obstructed the natural flow of surface waters, and to permanently enjoin these same defendants from in any way interfering with the natural drainage thereof. The basis for the action is the claim that the earthen dike or embankment caused the surface waters to back up and stand on the county's road and thus temporarily prevented its use and caused damage thereto. The trial court entered a decree against the county and denied it the relief asked for. The county thereupon filed a motion for new trial and has appealed from the overruling thereof.

In our consideration of the record the following is applicable: "It is the duty of the court to try the issues de novo and to reach an independent conclusion without being influenced by the findings of the district court except to the extent the evidence is in irreconcilable conflict, and as to that the court may consider the fact that the trial court saw the witnesses, observed their manner of testifying, and accepted one version of the facts rather

than the opposite." Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602.

The latter part of the foregoing quote has particular application to the evidence submitted relating to the condition existing at the corner involved immediately prior to the building by defendant Philipp Hartwig of a small house in the southeast corner of his farm. This he did in the spring of 1944. We shall hereafter refer thereto as a laborer's house.

The lands involved are the east half of Section 11 and the west half of Section 12, both sections being in Township 22 North, Range 56 West of the 6th P. M., in Scotts Bluff County. Philipp Hartwig is the owner of the northeast quarter of Section 11 and has been since 1927. His two sons, Henry and Conrad, are the owners of the northwest quarter of Section 12 and have been since 1946. They, with their respective wives, were made defendants herein and are the appellees.

The Mitchell Irrigation District was originally made a party to the action. The action was dismissed as to the district. No appeal was taken therefrom. It is, therefore, not a party to this appeal.

The county many years prior to the commencement of this action, but just how long ago is not shown, opened the section-line road between the southwest quarter of Section 12 and the southeast quarter of Section 11 and established and opened a county road between the northeast quarter and southeast quarter of Section 11. In the beginning this road was just a trail between two fences but gradually it has been improved by grading and gravelling until it has become a main county road regularly used as a mail and school bus route. The grading of the road resulted in borrow pits being cut along both sides of the road as it traverses this area.

The Mitchell Irrigation District, many years prior to the commencement of this action, but just how long ago is not shown, built an irrigation lateral in the southwest quarter of Section 12 running in a north-south direc-

tion along the west side thereof and just east of the section-line road. When this lateral reaches the point where the county road turns west the lateral also turns at an angle to the west until it reaches the section line. It then turns to the north and runs in the section line between the northwest quarter of Section 12 and the northeast quarter of Section 11. The west bank of this irrigation lateral is substantially higher than the surrounding areas with one exception, that is, at a point just east of where the county road turns west. At this point the irrigation lateral passes through a cement culvert which runs under a private lane. This lane extends from the turn in the road east onto the northwest quarter of Section 12. At the point of this culvert the irrigation lateral has no banks.

There was also an irrigation lateral built along the entire south side of the northeast quarter of Section 11. Just when the lateral was built is not shown but it apparently has been there for many years. The south part of this quarter slopes to the north and this lateral was and is used for irrigating the southern part thereof.

All the land herein involved slopes gently from the southwest to the northeast. In its natural state, before the building of these irrigation laterals, the moisture falling thereon would flow toward the northeast as diffused surface waters. After these irrigation laterals were built the surface waters, when they reached the banks of these irrigation laterals, turned and flowed either to the north or east, depending upon which lateral turned its flow. This caused the surface waters to collect at the turn in the road and on the northeast corner of the southeast quarter of Section 11. Just how large an area drains into this corner is not shown but apparently it is not very large. However, the water collecting in the corner has always caused the turn in the road to be wet and boggy after almost every rain of any consequence.

When this water collected in this corner it did not,

prior to 1944, reach a sufficient height that any substantial amount ever flowed north onto the northeast quarter of Section 11 and very little flowed east over the culvert and down the lane onto the northwest quarter of Section 12. It is apparent that the reason why it did not flow onto the northeast quarter of Section 11 was because of the irrigation lateral along the south side thereof and also because of the dirt and sand that had collected in the line of the fence running from the east end of the lateral east to the bank of the Mitchell Irrigation District lateral.

In the spring of 1944 Philipp Hartwig built a laborer's house on the southeast corner of his land. In connection with doing so he removed a section of the irrigation lateral and fence along the south line of his farm, just south of the house, and leveled off the ground where the lateral and fence had been. This somewhat lowered the general elevation of this area. Nothing happened, however, until June 1952. Then a heavy rain, augmented by water flowing over the west bank of the Mitchell Irrigation District lateral, caused sufficient water to collect in the corner that it flowed north onto the southeast corner of Philipp Hartwig's land, past the small house he had built there, and north onto the field for some 600 to 700 feet. There it ponded and drowned out about 10 acres of beans. The northeast quarter of Section 11 slopes from the south to the north and from the north to the south with an over-all general slope to the northeast. However, with the irrigation lateral along the east side thereof any water running on the land will collect in a pond along the east side thereof, about equal distance from the north and south line, and stay there until it evaporates or seeps away.

In October 1952, in order to correct this condition, Philipp Hartwig caused an earthen dike or embankment to be built along the south side of his land, just south of the laborer's house, and extended it far enough to the east so as to cover the culvert in the lane running

to the east onto the northwest quarter of Section 12. When another heavy rain came in June 1953 the surface waters therefrom, which were again substantially augmented by water flowing from the Mitchell Irrigation District's lateral, were prevented from running either north or east by this earthen bank. As a result they collected in this corner to a considerable depth and spread out onto the northeast corner of the southeast quarter of Section 11. The water did some damage to the road and for some 36 hours prevented the road from being used for travel. As already stated, it is to remove this dike or earthen embankment, and to permanently prevent it from being rebuilt, that this action was instituted.

Recognizing that the situation involves surface waters appellant suggests this court should overrule all its previous cases relating thereto and adopt the civil law rule as the law in force in this state, citing the fact that in Leaders v. Sarpy County, 134 Neb. 817, 279 N. W. 809, we cited Heier v. Krull, 160 Cal. 441, 117 P. 530, with approval. To fully understand the extent to which the rule announced in Leaders v. Sarpy County, *supra,* has application in this state we call attention to Jorgenson v. Stephens, 143 Neb. 528, 10 N. W. 2d 337, and Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154, wherein its application is discussed. We think the principles applicable to surface waters, and which are here controlling, are not in confusion as appellant suggests. Insofar as here material they are as follows:

"Water which appears upon the surface of the ground in a diffused state with no permanent source of supply. or regular course is regarded as surface water." Courter v. Maloley, 152 Neb. 476, 41 N. W. 2d 732.

"Surface water is that which is diffused over the surface of the ground, derived from falling rains or melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed

to and does flow with other waters, whether derived from the surface or springs, and it then becomes the running water of a stream and ceases to be surface water." Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387. See, also, Snyder v. Platte Valley Public Power & Irr. Dist., *supra;* Cooper v. Sanitary Dist. No. 1, 146 Neb. 412, 19 N. W. 2d 619; Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129.

"* * * Surface water is a common enemy and the proprietor may by embankment or dike or otherwise defend himself against its encroachments and will not be liable in damages which may result from the deflection and repulsion defended against, provided that the proprietor in making defense on his own land himself exercised ordinary care, and provided he so uses his own property as not to unnecessarily and negligently injure another." Snyder v. Platte Valley Public Power & Irr. Dist., *supra.* See, also, Jorgenson v. Stephens, *supra;* Courter v. Maloley, *supra;* Schomberg v. Kuther, *supra.*

"The right of the owner, without negligence, to protect his land against surface water is a continuing one and the right is commensurate with the necessity for protection." Courter v. Maloley, *supra.*

"Every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his damage; but if, in the execution of such enterprise, he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor." Schomberg v. Kuther, *supra.* See, also, Muhleisen v. Krueger, 120 Neb. 380, 232 N. W. 735; Courter v. Maloley, *supra.*

"While one may fight surface water and protect his premises against it by the use of reasonable means, he

cannot collect it in a large body and flow it onto the land of a lower proprietor to his injury. Todd v. York County, 72 Neb. 207, and cases there cited." Roe v. Howard County, 75 Neb. 448, 106 N. W. 587, 5 L. R. A. N. S. 831. See, also, Schomberg v. Kuther, *supra;* Keim v. Downing, *supra;* Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350; Hengelfelt v. Ehrmann, 141 Neb. 322, 3 N. W. 2d 576.

" 'Surface waters may have such an accustomed flow as to have formed at a certain place a channel or course, cut in the soil by the action of the water, with well-defined banks, and having many of the distinctive attributes of a watercourse; and though there are no exceptions to the general rule except from necessity, this may constitute an exception, and if the flow is stopped by the erection of an embankment across and in the channel, some provision may be necessary for the allowance of the regular flow of the surface waters.' (Town v. Missouri P. Ry. Co., 50 Neb. 768, 70 N. W. 402.) This same doctrine was enunciated in Jacobson v. Van Boening, 48 Neb. 80, and Morrissey v. Chicago, B. & Q. R. Co., 38 Neb. 406." Muhleisen v. Krueger, *supra.*

"Where surface water resulting from rain and snow flows in a well-defined course, whether it be a ditch, swale, or draw in its primitive condition, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors." Schomberg v. Kuther, *supra.* See, also, Snyder v. Platte Valley Public Power & Irr. Dist., *supra;* Jack v. Teegarden, *supra;* Courter v. Maloley, *supra;* McGill v. Card-Adams Co., 154 Neb. 332, 47 N. W. 2d 912; Ricenbaw v. Kraus, *supra.*

The latter is not the situation here as the surface waters have never flowed in any well-defined course on appellees' lands, either natural or artificial. It is true that it had collected in this corner for many years but there is no evidence that this collecting resulted in dumping it on appellees. In fact the evidence shows

that until 1952 it just collected in the corner and stayed there.

"An easement by prescription can be acquired only by an adverse user for ten years (Omaha & R. V. R. Co. v. Rickards, 38 Neb. 847); and in cases of this character the prescriptive right will not commence to run until some act or fact exists giving the party against whom the right is claimed a cause of action." Roe v. Howard County, *supra*. See, also, Courter v. Maloley, *supra*.

Under the conditions here shown to have existed no cause of action accrued to appellees until 1952. Situations may arise when conditions have so changed that the doctrine of estoppel will apply. See Johnk v. Union P. R. R. Co., 99 Neb. 763, 157 N. W. 918, L. R. A. 1916F 403. That is not the situation here.

In any event, as we said in Courter v. Maloley, *supra,* although "An easement may be acquired by prescription, or by open, notorious, exclusive, and adverse use for a period of ten years, for the flow of water in a watercourse or its flood plane. The rule however has no application to surface waters."

Since the county was, by statute, required to keep its roads open to travel does that fact give it an absolute right to drain surface waters upon lands adjoining a county road? In this regard we have said: "It is well settled that what would be illegal in the disposition of surface or other waters in a private individual, is likewise illegal when attempted by the public authorities, unless by agreement, or in the exercise of the power of eminent domain and by the payment of damages, the public authorities have acquired the right to collect and discharge the water upon the land of another." Roe v. Howard County, *supra.*

"What a private landowner may not do neither may a county nor other public authority do, except in the exercise of eminent domain." Purdy v. County of Madison, 156 Neb. 212, 55 N. W. 2d 617.

That the county has ample authority to relieve itself of this situation is evidenced by statutes relating to this duty. As an example see section 39-218, R. R. S. 1943. We find it must pursue such a course and that the statute provides an adequate remedy for that purpose. In other words, the county cannot take a landowner's property for this purpose without paying the damage he suffers as a result thereof.

We come then to the only question remaining, that is, were appellees negligent in constructing the dike and, if not, did they unnecessarily injure the county road by constructing it? We find nothing to indicate the dike or embankment was negligently constructed nor do we find its construction unnecessary for without it the land of Philipp Hartwig will be seriously and permanently damaged. We find what appellees did was a reasonable exercise of their right to repel these surface waters.

In view of the foregoing we have come to the conclusion that the judgment of the trial court is correct. We therefore affirm its action.

AFFIRMED.