TOWN OF EVERETT, BURT COUNTY, NEBRASKA, APPELLANT, V.
PAUL TEIGELER, APPELLEE.
77 N. W. 2d 467

Filed June 8, 1956. No. 33934.

*Richards, Yost & Schafersman,* for appellant.

*Spear & Lamme,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Town of Everett, a township in Burt County, brought this action seeking by mandatory injunction to require defendant Paul Teigeler to remove a dike and restore his adjoining land to its condition just before the dike was constructed. After hearing on the issues made by plaintiff's petition, defendant's answer, and plaintiff's reply, the trial court inspected the premises and rendered a judgment which found and adjudged the issues generally in favor of defendant and against plaintiff, and dismissed the action at plaintiff's costs. Plaintiff's motion for new trial was overruled, and it

appealed, assigning that the judgment was contrary to the evidence and law. We sustain the assignment.

As held in Wiskocil v. Kliment, 155 Neb. 103, 50 N. W. 2d 786: "Actions in equity, on appeal to this court, are triable de novo, subject; however, to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite."

Also, as held in Mader v. Mettenbrink, 159 Neb. 118, 65 N. W. 2d 334: "The trial court is required to consider any competent and relevant facts revealed by a view of the premises as evidence in the case, and a duty is imposed on this court on review of findings made by the trial court to give consideration to the fact that the trial court did view the premises; provided, that the record contains competent evidence to support the findings."

In the light of such rules and others hereinafter discussed, we have examined the evidence, which summarized fairly discloses the following: In 1943 plaintiff opened a 33-foot road in Burt County, running east and west between land in Section 11, Township 23, Range 8, owned by Alva Roscoe, whose land was adjacent to the road on the north, and land in Section 14, Township 23, Range 8, owned by defendant, whose land was adjacent to the road on the south. In a low spot in the road, about midway between such adjacent lands, plaintiff constructed a cement spillway for the passage of surface waters which naturally flowed south from Roscoe's land to a drainway on defendant's land, thence southward to a southern point on defendant's land where the water accumulated, and overflowed into Logan Creek, which drained it off in a south and southeast direction. Just south of the spillway, but on his own land, defendant constructed a dike running east and west, about 85 feet

long and 2½ to 3 feet high, which not only diverted the water from his land back up over plaintiff's road, but also diverted it westward for some distance, thence north, back across the road, where part of the water flowed back east in the north roadside ditch to the spillway, and part of it flowed northeast across Roscoe's land, thence back to the spillway and against defendant's dike. Thus, waters from defendant's diversion and from Roscoe's land dammed up over plaintiff's road for a distance of as much as 80 rods during heavy rains, making the road impassable and unable to be maintained. It is such dike that plaintiff sought to have removed by mandatory injunction, which relief we conclude the trial court should have granted.

Years ago both farms were owned by the same person, but operated separately. There was a private lane or road of a sort between them which was at times impassable at the low spot involved, and required detouring through adjoining fields. On both sides of such lane, there was hay land and pasture and a well-defined ditch with banks which continued from what is now the Roscoe land on into what is now defendant's land, thence on down toward the south into Logan Creek as a general drainage course. Whether the ditch was natural or man-made is not established with any certainty. In any event, for many years it carried water enough at times so that in early days men hunted along it and caught fish in it which had come back up out of Logan Creek. There is no dispute that waters falling on these lands had to drain through that territory toward the south and east, and that waters had always gone across the road in that direction where the spillway was later constructed.

Roscoe bought the north farm in 1920. At that time there was a small ditch on his land extending from northwest in a south or southeast direction into defendant's land at the location of the spillway. Roscoe farmed over that ditch but kept it cleaned out. In

1927 he broke up the hay meadow and pasture. A little later he tiled it, with the outlet running under the land now owned by defendant, into Logan Creek. Roscoe's land, from a point north of the road and west of the spillway, slopes downward to the east and northeast. Further north it slopes downward to the east and southeast to the spillway. From there it slopes upward to the east both north and south. East of the spillway defendant's land slopes upward to the east, and west of the spillway defendant's land slopes to the north and east. It was from that portion of defendant's land that the dike diverted water back over Roscoe's land into the roadside ditch and over the road.

It is clear that the water from Roscoe's land formerly reached the low spot where the spillway is, and then flowed south and a little east across defendant's land. Part of it in the south end thereof might be stored on defendant's land until it evaporated, but if there was any considerable volume of water it went on south into Logan Creek over defendant's land.

In about 1927 Roscoe constructed a ditch across the north part of his farm toward the east, from about where his buildings are located, to Logan Creek. Such ditch drained off nearly all the water on about the north half of Roscoe's farm, which water had formerly gone down toward the spillway and on over defendant's land. Later, in 1942, Roscoe put a dike on the south side of that ditch and since that time, except in case of unusual floods, he has kept all waters upon such north half from flowing south, which has relieved the Roscoe land and defendant's land of waters which they had formerly received.

There is also a roadside ditch running east and west just north of plaintiff's road and west of the spillway, which Roscoe admitted he had cleaned out to improve drainage. There is no dispute that when Roscoe cleaned out that ditch and the one heretofore mentioned running from northwest to southeast, it did not result in

any additional water being received by defendant, but it naturally made it reach the spillway faster.

Defendant bought the south farm in 1942. His land south of the spillway had been broken up in about 1928 or 1929. Contrary to a preponderance of credible evidence, he testified that there were no ditches on Roscoe's land that drained on to his land until about 1949, when Roscoe constructed them. He also testified that there was no drainway or watercourse 2 feet below the surrounding land on his land south of the spillway. He admitted that there was a swale on the south 80 rods of his land, which drained into Logan Creek. In 1952 he consulted conservation authorities and had a survey made. Later, with a Caterpillar tractor and scraper, defendant dug a ditch from a point 200 feet south of the spillway clear through, straight south to his south line. Connected therewith he also dug a ditch toward the east thereof, with a dike on its south side which carried waters from his land into Logan Creek. He also dug another ditch from near the north line of his land in a southeast direction and emptied it into Logan Creek. Water from heavy rains still flowed and accumulated on and over his land, so, without conservation advice, defendant built the dike here involved and extended his ditch up to it. Such dike admittedly holds back water coming down from the north toward the spillway and casts it back upon and over plaintiff's road. Defendant's contention that he was absolved from any liability because of the ditches claimed by him to have been constructed by Roscoe on his own land, together with Roscoe's manifest interest in this litigation, has no merit.

The soil conservation official who made the survey for defendant tesitfied that there was no defined watercourse 2 feet below the surrounding land leading south from the spillway over defendant's land, but that he did not advise defendant to build the dike. Defendant's tenant testified that there was an impression of a water-

way running south to defendant's south line from a point about 80 rods north thereof, and that the other 80 rods north of it up to the spillway was just naturally low where the water came down from the spillway and wound its way around through the lowest places until high enough to move on over into Logan Creek, but there was no watercourse 2 feet below the surrounding lands leading south from the spillway. During high water, he saw water flowing from Roscoe's land across into defendant's conservation ditch from each side of the dike, thence right on over across defendant's land to its south end. He admitted that water went west from defendant's dike, then crossed the road back north to Roscoe's land, thence south to the spillway; and that even without any ditches on Roscoe's land, the water would wind its way slowly across where the spillway was, where it had washed out an impression on defendant's land to the south.

One witness for defendant testified that in the 1920's, there was a ditch or drainway on the lands of both Roscoe and defendant in which water ran on down into Logan Creek, and that even without any ditches the water would go south and east where it always went. Another such witness testified that a ditch ran in a straight line from northwest to southeast on Roscoe's land, then turned straight south on and over defendant's land. He never saw a watercourse 2 feet below the surface of the surrounding land, but the water did go on across defendant's land, with the size of the stream dependent upon the amount of the rain. From about 1929 they just farmed right on across the ditch, but the water still went in the same course south and east as it always did.

Throughout this case defendant, relying upon section 31-202, R. R. S. 1943, has erroneously assumed, as the trial court must have done, that in order to be liable, the outlet from the spillway across south on defendant's land was required to be a depression or

draw at least "two feet below the surrounding lands and having a continuous outlet to a stream of water or river or brook." In doing so, defendant has doubtless overlooked the fact that sections 31-201 and 31-202, R. R. S. 1943, must be construed and applied together. See Bussell v. McClellan, 155 Neb. 875, 54 N. W. 2d 81, where we so construed and applied them. Such opinion is also authority for the rule that in cases such as that at bar, the flow of surface water in any well-defined course, whether it be a ditch, swale, or draw in its primitive condition, and whether or not it is 2 feet below the surrounding land, cannot be arrested or interfered with to the injury of neighboring proprietors.

In McGill v. Card-Adams Co., 154 Neb. 332, 47 N. W. 2d 912, this court held: "It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstruction of all waters which may be reasonably anticipated to drain there. This is a continuing duty.

"Where surface water resulting from rain and snow flows in a well-defined course, whether it be a ditch, swale, or draw in its primitive condition, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors.

"For such an injury injunction is the proper remedy, and equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief." See, also, Mader v. Mettenbrink, supra; Leaders v. Sarpy County, 134 Neb. 817, 279 N. W. 809.

As held in County of Scotts Bluff v. Hartwig, 160 Neb. 823, 71 N. W. 2d 507: "Surface water is a common enemy and the proprietor may by embankment or dike or otherwise defend himself against its encroachments and will not be liable in damages which may result from the deflection and repulsion defended against, provided that the proprietor in making defense on his own

land himself exercised ordinary care, and provided he so uses his own property as not to unnecessarily and negligently injure another.

"The right of the owner, without negligence, to protect his land against surface water is a continuing one and the right is commensurate with the necessity for protection.

"While one may fight surface water and protect his premises against it by the use of reasonable means, he cannot collect it in a large body and flow it onto the land of a lower proprietor to his injury."

Conversely, of course, the last rule aforesaid has application when a lower proprietor collects surface water in a large body and diverts it upon the land of an upper proprietor. For example; in Pospisil v. Jessen, 153 Neb. 346, 44 N. W. 2d 600, involving comparable circumstances, this court said: "As to the dike which defendant constructed it was in the natural course of drainage for water coming down from plaintiff's land. It was constructed for no other purpose than to prevent the flow of this water over his land and on down over a natural course to ultimately empty into a creek some miles away. The dike diverted the water from its natural course and caused it to back up and inundate plaintiff's land.

"This under the principles announced he had no right to do. The plaintiff was entitled unqualifiedly to have the dike removed to the extent that it interferes with the free flow of water in the natural course of drainage and to an injunction restraining its maintenance or reconstruction."

Therein we also held: "Water flowing in a well-defined watercourse cannot lawfully be diverted and cast upon the lands of another to his damage where it was not wont to run in the natural course of drainage."

Likewise, in Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129, we held: "A proprietor may not collect surface waters on his estate into a ditch or drain and

discharge them in a volume on the lands of his neighbor, nor can he divert them so they go in a direction different from the natural flow."

In Purdy v. County of Madison, 156 Neb. 212, 55 N. W. 2d 617, we said: "The question raised, therefore, is whether the county could properly cover up the culvert and dam the natural drainage course where the surface waters were wont to flow in a state of nature. In so doing, the county carried the water in the north road ditch, doing damage to the plaintiff's driveway and to his meadow land on the east side of his quarter. We have held many times that water cannot be so diverted from its natural drainage course as it existed in a state of nature to the damage of another." See, also, Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387.

As early as Town v. Missouri P. Ry. Co., 50 Neb. 768, 70 N. W. 402, this court held: "Surface waters may have such an accustomed flow as to have formed at a certain place a channel or course, cut in the soil by the action of the water, with well-defined banks, and having many of the distinctive attributes of a watercourse; and though there are no exceptions to the general rule except from necessity, this may constitute an exception, and if the flow is stopped by the erection of an embankment across and in the channel, some provision may be necessary for the allowance of the regular flow of the surface waters."

In that connection, this court held in Muhleisen v. Krueger, 120 Neb. 380, 232 N. W. 735: "The rule in Town v. Missouri P. R. Co., 50 Neb. 768, examined, approved, and followed, this case not coming under the exception to the general common-law rule as to surface waters suggested therein, and as announced in Flesner v. Steinbruck, 89 Neb. 129, and Aldritt v. Fleischauer, 74 Neb. 66."

In Flesner v. Steinbruck, 89 Neb. 129, 130 N. W. 1040, 34 L. R. A. N. S. 1055, this court held: "Every interference by one landowner with the natural drainage to

the injury of the land of another is unreasonable, if not made by the former in the reasonable use of his own property.

"It is not a reasonable use of one's property to construct a dike across a natural drain upon farm lands for the sole purpose of preventing the flow of unpolluted water from a neighbor's land in the natural course of drainage, where such flow had theretofore at all times been uninterrupted.

"A lower proprietor has no lawful cause for complaint because the upper proprietor, in the exercise of good husbandry, by the use of ditches changes the course of drainage upon his own premises, but permits the water to flow without an appreciable increase in volume upon the servient estate in a natural drain, where it would have appeared if the ditches had not been constructed.

"If an upper proprietor, in the interest of good husbandry, and without negligence, collects in a ditch surface water, which formerly spread over his premises, and accelerates its flow in the natural course of drainage through a natural drain onto the lands of his neighbor, he is not liable therefor."

Also, in Mapes v. Bolton, 89 Neb. 815, 132 N. W. 386, this court held: "A lower proprietor may not unnecessarily obstruct a natural drain upon his own premises without the upper proprietor's consent, so as to collect surface water and cast it back upon his neighbor's farm where it would not appear but for that obstruction, and to the injury of his neighbor's crops and land.

"Section 1, art. III, ch. 89, Comp. St. 1909, which authorizes a proprietor to drain his land by tile or open ditches so constructed as to discharge water into any depression or draw upon his own premises, does not authorize him to dam up and permanently obstruct a natural drain, so as to prevent assembled surface water from flowing therein in the natural course of drainage, and so as to injure his neighbor's crops and lands."

Section 1, article III, chapter 89, Comp. St. 1909, now appears as section 31-201, R. R. S. 1943.

In the light of such rules and the evidence aforesaid, we conclude that the judgment of the trial court should be and it is hereby reversed and the cause is remanded with directions to render judgment against defendant and in favor of plaintiff as prayed in plaintiff's petition. All costs are taxed to defendant.

REVERSED AND REMANDED WITH DIRECTIONS.