CLARENCE H. BARRY ET AL., APPELLANTS, v. STEVEN K. WITTMERSEHOUSE ET AL., APPELLEES.

327 N.W.2d 33

Filed December 3, 1982. No. 81-576.

Charles H. Wagner of Edstrom, Bromm, Lindahl & Wagner, for appellants.

Keith I. Frederick and Richard W. Ratz of Schmid, Ford, Mooney & Frederick, for appellees.

Heard before BOSLAUGH, MCCOWN, CLINTON, and WHITE, JJ., and BRODKEY, J., Retired.

WHITE, J.

This is an action in equity to enjoin the defendants from maintaining a dike which interferes with the flow of water from the plaintiffs' land. After trial on the issue the trial court inspected the premises and entered judgment for the defendants. Plaintiffs' assignments have been consolidated for purposes of this review. Plaintiffs maintain that the lower court erred in failing to apply the rule that surface water from higher lands may not be dammed, repelled, or diverted if it is flowing into a natural watercourse or into a natural body of water. The plaintiffs also assigned as error that the trial court failed to find that a permanent pond or natural body of water existed on the defendants' land, both as a matter of fact and as a matter of law. We affirm.

Since this is an action in equity we review the matter de novo without reference to the findings of fact made by the trial court but, where the testimony or evidence is in irreconcilable conflict, take into consideration that the trial court observed the witnesses. *Jameson v. Nelson,* 211 Neb. 259, 318 N.W.2d 259 (1982); *Peters v. Langrehr,* 188 Neb. 480, 197 N.W.2d 698 (1972). We also take into consideration the fact that the trial court did view the premises, and we will give appropriate weight thereto. *Jameson v. Nelson, supra; Delp v. Laier,* 205 Neb. 417, 288 N.W.2d 265 (1980).

In view of the foregoing rules we have examined the record, which revealed the following facts: The plaintiffs are owners of the south half of the northwest quarter of Section 27, Township 16 North, Range 7 East of the 6th P.M., Saunders County. The defendants constructed an earthen dike approximately 2 to 2½ feet in height along a portion of the north line of the southwest quarter of Section 27. The purpose of the dike was to prevent waters from draining from the plaintiffs' land in the north to de-

fendants' land in the south. As a result of the installation, surface water was repelled and collected on plaintiffs' southern border in a 2.4-acre depression next to the dike. All of the plaintiffs' bean crop in the 2.4-acre area was destroyed. Just south of the dike there is a low-lying area in the defendants' land that holds water after a heavy rain or melting snow. Part of the low spot was dug out 20 years ago to accommodate water year round.

The plaintiffs' testimony at trial was that their land had continual water problems with several low-lying areas. The low-lying areas left the land wet after rain or snow and created alkaline spots, over which the plaintiffs could not easily move their farm machinery. To remedy the situation, in 1964 plaintiffs commenced extensive land-leveling operations. Approximately 10 low areas appear in an exhibit previous to 1964 and only one low area after the land leveling was complete.

There was additional evidence that the land leveling increased the flow of surface water onto defendants' land, along with a trench or "dead furrow" that the plaintiffs plowed a few years later. However, we note that the flow of surface water may be increased and diverted upon the land of another, if it is done through a natural watercourse which already existed and is done in a reasonable and careful manner without negligence. *Nichol v. Yocum,* 173 Neb. 298, 113 N.W.2d 195 (1962).

Therefore, the issue remains as to whether a natural watercourse existed on plaintiffs' property which drained onto defendants' property. The land at issue is basically flat and level, with the exception of the above-mentioned depression which is less than 1 foot in depth at its lowest point. Though it was disputed, it appears from the evidence and testimony offered that the natural flow of surface water drainage has been from the middle portion of plaintiffs' land to defendants' land in the south, both before

and after the land leveling had occurred. However, there is no converging of the surface water into a well-defined course. The testimony of plaintiffs' expert surveyor, including the plats prepared by him, negate any notion of a natural drain or watercourse. The plats offered merely illustrate that surface waters from 40 acres of an 80-acre tract collect in a wide, slightly depressed area. A 1949 aerial photograph indicates several low areas, but it is not helpful in determining the direction of the flow of surface water or where the draw or depression begins. The 1969 geological topographical survey map of a 1:24,000 scale fails to show any depression at all in the area in question. The photographs offered also failed to show a well-defined channel or course cut in the soil by the action of the water. In order to constitute an exception to the general rule that surface water may be repelled, at least some of the distinctive attributes of a watercourse must be demonstrated. *Muhleisen v. Krueger,* 120 Neb. 380, 232 N.W. 735 (1930).

A watercourse is defined by statute as "Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook shall be deemed a watercourse." Neb. Rev. Stat. § 31-202 (Reissue 1978).

The flow of surface water in any well-defined course, whether it be a ditch, swale, or draw in its primitive condition, and whether or not it is 2 feet below the surrounding land, cannot be arrested or interfered with to the injury of neighboring proprietors. *Town of Everett v. Teigeler,* 162 Neb. 769, 77 N.W.2d 467 (1956).

" 'To constitute a water course, it must appear that the water usually flows in a particular direction; and by a regular channel, having a bed with banks and sides; and (usually) discharging itself into some other body or stream of water. It may sometimes be dry. It need not flow continuously;

but it must have a well defined and substantial existence. * * * there is a broad distinction between a stream and brook, constituting a water course, and occasional and temporary outbursts of water occasioned by unusual rains or the melting of snows, flowing over the entire face of a tract of land, and filling up low and marshy places, and running over adjoining lands, and into hollows and ravines which are in ordinary seasons destitute of water and dry.' " *Mader v. Mettenbrink,* 159 Neb. 118, 127, 65 N.W.2d 334, 342 (1954).

In the instant case the de novo review of the record shows that occasionally surface water, caused by heavy rains or snows, collected in the low areas on the plaintiffs' land and flowed toward the defendants' land. When the overflow would reach the defendants' land, it would spread out and fill up the low area thereon. We do not think the overflow from these low areas ever reached the stage where it could be called a watercourse rather than merely diffused surface water.

Surface water is a common enemy and the proprietor may by enbankment or dike or otherwise defend himself against its encroachment, and he will not be liable in damages which may result from the deflection and repulsion defended against, provided that the proprietor in making defense on his own land himself exercises ordinary care, and provided he so uses his own property as not to unnecessarily and negligently injure another. *County of Scotts Bluff v. Hartwig,* 160 Neb. 823, 71 N.W.2d 507 (1955).

Plaintiffs' second assignment of error relies on *Block v. Franzen,* 163 Neb. 270, 79 N.W.2d 446 (1956), for the proposition that the owner of a lake or pond which accumulates surface water from the surrounding area may not discharge water by ditch or dike upon the land of his neighbor without his consent. The plaintiffs maintain that the trial court was in error in finding that the low spot on defend-

ants' land did not constitute a permanent pond or lake. We do not agree.

In *Block, supra,* a permanent pond was in between both the litigants' lands. The defendants had two-thirds of a 50-acre pond on their land, with the remaining one-third on the plaintiffs' land. The defendants built a dike along the north side of their property, which prevented surface waters from reaching their lands and caused ponding to occur exclusively on the plaintiffs' property. In the instant case we do not have the plaintiffs bearing the full burden for defendants' portion of a permanent pond, nor do we have the defendants discharging water that naturally ponded on their land. In considering all the evidence in this case, what we do have is merely a low area which collects water temporarily only in times of heavy rain and melting snow. The only portion which remains permanent is the small portion that has been artificially deepened by the defendants. The low area is also exclusively on the defendants' land.

The *Block* court, *supra* at 277, 79 N.W.2d at 450, went to great lengths to distinguish between a temporary and permanent body of water. Citing the Restatement of Torts § 842 (1939), the court stated: " 'To constitute a lake, a body of water must have a reasonably permanent existence. Many lakes have a permanent body of water. But the body of water need not be permanent in order to constitute a lake. Thus a body of water which occasionally dries up in periods of drought is still a lake. On the other hand bodies of water, even though of considerable size, which collect only in times of heavy rain, flood or melting snow, and which soon dry up, are not lakes within the meaning of that term as here defined.' "

We conclude from the evidence presented that neither a natural watercourse exists on the plaintiffs' land nor a natural, permanent pond on the defendants' land. We hold, therefore, that the plain-

tiffs are not entitled to have the dike removed. The judgment of the trial court is hereby affirmed.

AFFIRMED.