MAX D. HICKMAN ET AL., APPELLEES, CROSS-APPELLANTS, AND CROSS-APPELLEES, V. IVAN HUNKINS, APPELLANT AND CROSS-APPELLEE; TOWN OF COMSTOCK, ALSO KNOWN AS COMSTOCK TOWNSHIP, CUSTER COUNTY, NEBRASKA, IVAN HUNKINS, CHAIRMAN, APPELLEE, CROSS-APPELLANT, AND CROSS-APPELLEE; AND MIDDLE LOUP IRRIGATION DISTRICT, APPELLEE.

489 N.W.2d 316

Filed April 7, 1992.   No. A-89-1153.

Cathleen H. Allen and D. Steven Leininger, of Luebs, Beltzer, Leininger, Smith & Busick, for appellant.

Daniel L. Aschwege and Graten D. Beavers, of Knapp, Mues, Beavers, Luther & Fangmeyer, for appellee Comstock.

Charles R. Maser for appellees Hickman.

SIEVERS, Chief Judge, and MILLER-LERMAN and WRIGHT, Judges.

WRIGHT, Judge.

This action was commenced by the plaintiffs, Max D. Hickman, Miriam J. Hickman, and M. Douglas Hickman (Hickmans), against the defendant Ivan Hunkins; the defendant Town of Comstock, also known as Comstock Township, Ivan Hunkins, Chairman (Township); and the defendant Middle Loup Irrigation District. Apparently, at some point not evident from the record, the irrigation district was dismissed as a party to the action.

Hickmans alleged that on or about May 3, 1983, Hunkins breached a dike, causing surface water to drain upon Hickmans' property, and that Hunkins placed a 12-inch culvert under his driveway, which allowed additional water to drain onto Hickmans' property, causing damage to plaintiffs' land. Hickmans also alleged that the Township permitted Hunkins to breach the dike for the purpose of improving the township road and such action was a taking of plaintiffs' property without just

compensation.

Hunkins admitted he caused the dike to be breached and admitted he placed the 12-inch culvert under his driveway. He speculated that when the dike was breached and the culvert installed, the water flowed for about 1½ days.

Attached to this opinion is exhibit A, which we will use to describe an approximation of the location of the water north of Hunkins' driveway, the culvert installed by Hunkins, the location of the breach of the dike, and the path of the water as it flowed onto Hickmans' property.

The trial court made the following findings:

1. Hunkins was advised by Douglas Hickman that he did not want the dike breached, since he did not think the land he farmed could take all the water.

2. Hunkins did not seek or receive any professional advice on the consequences of breaching the irrigation dike.

3. On May 3 or 4, 1983, Hunkins, as an officer of the defendant Township, negligently opened the irrigation dike and caused approximately 8 inches of water from 70 acres to flow onto the plaintiffs' land.

4. On May 3 or 4, 1983, Hunkins, as an individual, negligently replaced an old culvert on his land and diverted water from 200 acres of his land into an irrigation lateral and onto the plaintiffs' land.

5. The opening of the dike proximately caused $3,325 in damage to plaintiffs. The replacement of the culvert proximately caused $29,729 in damage to plaintiffs.

6. Other damages claimed by the plaintiffs were not proved by a preponderance of the evidence.

7. The action of the Township was a taking and damaging of property prohibited by article I, § 21, of the Constitution of the State of Nebraska.

8. The flooding and damage continued through the irrigation dike until May 1984, and the defendant Township was made a party to this suit in February 1988, well within the applicable 4-year statute of limitations set forth in Neb. Rev. Stat. § 25-207 (Reissue 1989).

9. The action of Hunkins in opening the irrigation dike was capricious and irrational.

10. The drainage easement in the land contract did not give Hunkins the right to increase the flow across Hickmans' land or to divert water into the irrigation lateral.

## STANDARD OF REVIEW

In a bench trial of a law action, the trial court's factual findings will not be set aside on appeal unless they are clearly wrong. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Id.*

## FACTS

The plaintiffs Max and Miriam Hickman purchased the northeast quarter of Section 26, Township 18 North, Range 17 West of the 6th P.M., in Custer County, Nebraska, and 47 acres adjoining on the west from the defendant Hunkins and his wife by installment land sale contract on August 21, 1978. Their son, Douglas Hickman, farmed the land. The east boundary of Hickmans' and Hunkins' land was a north-south township road. Hunkins' land is north of Hickmans' land and had an elevated driveway running east and west which prevented about 200 acres of accumulated surface water from running south onto the Hickmans' property.

On May 3 or 4, 1983, Hunkins replaced the plugged culvert under his driveway with another 12-inch culvert. This culvert drained the 200 acres north of his property into the lateral (L1) which ran southeasterly to the north property line of the Hickmans and then west to the end of L2 and C4. See exhibit A at the end of this opinion. When the water reached the west end of L2 it went south and flooded Hickmans' field, filled the pump station, filled the southernmost drain (D2), and washed out the culvert. It washed through the road and took out the culvert (C5) and the road. The water continued south onto a cropland field which had not been planted but had been fertilized and washed out an 18-inch culvert and road at C6. At the fishpond, the water commingled with water from the breach of the dike. The pond was filled with silt, and where the pond had been 10 feet deep it was 4 feet deep, where it had been

8 feet deep it was 3 feet deep, and where it had been 6 feet deep it was from 2 feet to a few inches deep. Hickmans had to replace six culverts.

The dike east of the township road had approximately 70 acres of accumulated surface water. In some areas, the water was 4 feet deep. The water from the breached dike flowed across the township road and then diagonally across Hunkins' property to a culvert (C1) on Hickmans' property and washed out the road and the culvert. See exhibit A. It went southwesterly to a stock watering pond, south into a drain (D1), south to another field road with a 12-inch culvert, and under the culvert; backed up into the meadow; and ran over a road and washed out another culvert (C2) and the roadway. The water continued through this same drain to the east corner of the fishpond. It washed out the culvert and the road above the culvert (C3), commingled with the water in the fishpond, went across the pond in a southerly direction, and cut 20 to 30 feet off the south edge of the pond and dropped the fence into the pond.

Hunkins told Max Hickman the reason the work was done on the dike was to help dry out his meadow and to get rid of the water. No mention was made of breaching the dike to improve the township road.

## THE COMSTOCK TOWNSHIP

The district court found that on May 3 or 4, 1983, Hunkins, as an officer of the Township, negligently opened the irrigation dike and caused approximately 8 inches of water from 70 acres to flow onto Hickmans' land. The court applied the 4-year statute of limitations of § 25-207 and determined that Hickmans' cause of action accrued in May 1984, because the flooding and damage continued through the irrigation dike until May 1984. We find that the judgment against the Township should be reversed and the cause remanded with directions to dismiss the judgment and the action against the Township.

Hickmans' repairs to the dike, which continued into the spring of 1984, did not toll the statute of limitations against the Township. The action was commenced against the Township under article I, § 21, of the Constitution of the State of

Nebraska. The 4-year statute of limitations applies to actions for injury to the rights of plaintiffs not arising on contract. § 25-207. The point at which a statute of limitations commences to run must be determined from the facts of each case. A cause of action accrues, and the statute of limitations begins to run, when the aggrieved party has the right to institute and maintain suit. *Mangan v. Landen*, 219 Neb. 643, 365 N.W.2d 453 (1985).

It was clear from the testimony of the witnesses that on May 3 or 4, 1983, when Hunkins breached the dike and installed the culvert under his driveway, there was an onrushing of water that washed out seven culverts, six of which had to be replaced, and eventually collected in the pond on Hickmans' property and essentially flooded everything in between. These events occurred within the space of 1½ days. The cause of action arose May 3 or 4, 1983. Under *Mangan v. Landen, supra*, the cause of action accrued when the dike was breached and a large body of water flowed immediately onto the plaintiffs' land. The findings of the court stated the Township was made a party in February 1988, which was more than 4 years after the plaintiffs' cause of action accrued. The action against the Township was time barred.

The Nebraska Supreme Court has held, "A cause of action accrues, then, and the statute of limitations begins to run, when the aggrieved party has the right to institute and maintain suit, even though such plaintiff may be ignorant of the existence of the cause of action." *Ward v. City of Alliance*, 227 Neb. 306, 310, 417 N.W.2d 327, 331 (1988). Hickmans' attempts to repair the dike did not toll the statute of limitations. The dike was breached on May 3 or 4, 1983, and the Hickmans were well aware of the resulting damages at that time. In reviewing the district court's judgment on the issue of the statute of limitations, the findings and decisions of the district court will not be set aside unless clearly wrong. The finding of the trial court that the flooding continued until May 1984 and that this action was timely as applied to the Township was clearly wrong and must be reversed. See *Frezell v. Iwersen*, 231 Neb. 365, 436 N.W.2d 194 (1989). Because we reverse and dismiss the claim against the Township, we need not address other assignments of error

made by the Township.

## BREACH OF THE DIKE

The next issue is whether Hunkins was liable to the Hickmans for breaching the dike. An examination of the law regarding surface waters is necessary to determine the rights and duties of Hunkins to the owners of land subservient to his.

The principle that a landowner, in protecting his land from surface water and in discharging such surface waters, must act in a reasonable and careful manner and without negligence has been the rule in Nebraska since at least 1893. *Anheuser-Busch Brewing Association v. Peterson*, 41 Neb. 897, 60 N.W. 373 (1894); *Morrisey v. Chicago, B. & Q. R. Co.*, 38 Neb. 406, 56 N.W. 946 (1893); *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb. 526, 62 N.W. 859 (1895). This rule was extensively discussed in *Todd v. York County*, 72 Neb. 207, 100 N.W. 299 (1904).

The rule, simply stated, is that in draining surface water, the rights of the lower proprietor are to be respected and the upper proprietor cannot act in a negligent manner. The Nebraska Supreme Court has held:

1. An owner has the undoubted right to protect his land from mere surface water and, in the interest of good husbandry, to drain lagoons or basins thereon of a temporary character, by discharging such surface waters by means of artificial channels into a natural surface water drain and through such drain or channel on and over the land of another, provided such person acts in a reasonable and careful manner and without negligence, and the injury, if any, resulting therefrom to such lower proprietor by reason of the increased flowage in the natural surface water drain, will be accounted *damnum absque injuria*. For negligence in the manner of accomplishing the improvement, such owner is responsible and accountable to those injured by his negligent acts.

2. An owner's right to discharge surface water from his premises does not extend so far as to permit him to collect it in a volume, and by means of an artificial channel discharge it upon another's land contrary to the natural

course of drainage to the latter's damage and detriment. *Todd v. York County*, 72 Neb. at 220-21, 100 N.W. at 305.

The court, in *Pospisil v. Jessen*, 153 Neb. 346, 44 N.W.2d 600 (1950), also recognized that an owner of land has the right, in the interest of good husbandry, to drain ponds or basins thereon of a temporary character which have no natural outlet or course of flow, by discharging the waters thereon by means of an artificial channel or ditch into a natural surface water drain on his own property and through such drain over the land of another proprietor in the general course of drainage in that locality, even though the flow and such natural drain is thereby increased over the lower estate, provided that this is done in a reasonable and careful manner and without negligence.

In *County of Scotts Bluff v. Hartwig*, 160 Neb. 823, 71 N.W.2d 507 (1955), the court recognized that a proprietor may defend himself against the encroachments of surface water and will not be liable in damages which may result from the deflection or repulsion defended against, provided the proprietor exercised ordinary care and provided he uses his own property so as to not unnecessarily and negligently injure another. The court said:

> "While one may fight surface water and protect his premises against it by the use of reasonable means, he cannot collect it in a large body and flow it onto the land of a lower proprietor to his injury." Todd v. York County, 72 Neb. 207, 100 N.W. 299 . . . .

160 Neb. at 829-30, 71 N.W.2d at 512.

*Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962), held that surface waters collected and concentrated in volume which flowed into a natural drainageway could not be dammed or otherwise repelled by the lower estate. The upper proprietor could construct an artificial channel into which the surface waters were drained and the channel did not itself have to follow the exact natural course of drainage if the channel carried the water in the general course of drainage.

Neb. Rev. Stat. § 31-201 (Reissue 1984) states:

> Owners of land may drain the same in the general course of natural drainage by constructing an open ditch or tile drain, discharging the water therefrom into any

natural watercourse or into any natural depression or draw, whereby such water may be carried into some natural watercourse; and when such drain or ditch is wholly on the owner's land, he shall not be liable in damage therefor to any person or corporation.

However, the right of the upper proprietor to discharge such water is not absolute. The discharge must be done in a reasonable and careful manner and without negligence. The trial court had to first determine that Hunkins was negligent before any liability could be imposed. The record showed that Hunkins was advised by Hickman that if the dike were breached Hickmans' land could not take all of the water. Hunkins did not seek or receive the advice of any professional as to the consequences of breaching the dike.

The cases relied upon by appellant, *Nichol v. Yocum, supra*, *Erickson v. Tyler*, 186 Neb. 743, 186 N.W.2d 123 (1971), and *Barry v. Wittmersehouse*, 212 Neb. 909, 327 N.W.2d 33 (1982), do not help the appellant. If the flow of the water into such natural drain is increased over the lower estate, it must be done in a reasonable and careful manner and without negligence. *Pospisil v. Jessen, supra*.

*Nickman v. Kirschner*, 202 Neb. 78, 273 N.W.2d 675 (1979), required that the draining of ponds or basins which have no natural outlet by discharging the waters through an artificial channel must be done in a reasonable and careful manner and without negligence. The duty of the property owner to act reasonably was recognized in *Young v. City of Scribner*, 171 Neb. 544, 548-49, 106 N.W.2d 864, 868 (1960):

"We take it that it is a well-settled principle of the law that neither the owner of land nor a municipal corporation has any right to collect waters and discharge them upon the lands of another in a greater quantity than what would have reached the property by natural drainage. . . . We can conceive no reason why the same rule should not be applied to surface drainage or surface sewers."

Quoting *Naysmith v. City of Auburn*, 95 Neb. 582, 146 N.W. 971 (1914). See *Eunice Harrington Investments, Ltd. v. Wallace*, 207 Neb. 373, 299 N.W.2d 174 (1980). In *LaPuzza v. Sedlacek*, 218 Neb. 285, 353 N.W.2d 17 (1984), the court

recognized that once a landowner diverts surface water and upsets the natural flow, he has a duty to do so reasonably and avoid damage to his neighbor.

Having reviewed the record, we find there was sufficient evidence for the court to find that Hunkins negligently breached the dike, which discharged water from 70 acres onto the land of the plaintiffs.

## IMMUNITY OF HUNKINS

The next issue is whether Hunkins was immune from liability because he was an officer of the Township. This case does not involve a taking or damaging of property prohibited by article I, § 21, of the Constitution of the State of Nebraska. There is no evidence that Hunkins, in breaching the dike, was acting under any express authority of the Township. Permission to breach the dike from the irrigation company did not convey such authority. The court's finding that Hunkins was an officer of the Township did not protect him from liability. We find that Hunkins was liable individually and was not immune as an officer of the Township.

Hunkins had the burden of proof to establish that he was immune from liability. Hunkins may have been informally delegated authority to deal with roads in the south part of the Township, but there was no evidence his actions in breaching the dike were necessary for the proper maintenance or repair of the north-south road west of the dike or that any emergency existed requiring immediate attention. Another board member stated that the board was not aware of Hunkins' actions for a long time after the dike had been breached and that the matter was never discussed by the board.

Such action could not have been within the authority of the Township and was in fact an independent action by Hunkins based on personal motives. On direct examination by his attorney, Hunkins admitted that the reason he wanted to open the dike was to stop the drainage problems in his meadow. Improvement of the road was never discussed. The following question was asked:

Q: There has been some testimony here that you stated to Max Hickman and also Douglas Hickman that the

reason that you wanted to open that dike was to stop drainage problems in your meadow, did you make those statements to them?

[Hunkins]: I might have. At the time I opened it I certainly had a lot of water that didn't do me a bit of good but once that water is out there the whole area, dry road and everything around it and I might have made a statement to that. It would lower the ground water in all of that area.

That Hunkins was an officer of the Township did not absolve Hunkins from liability for his negligence. Hunkins' allegations that what he did to the dike was done as an officer of the Township in good faith within the scope of his authority and without willfulness were clearly not supported by the record. The trial court found that Hunkins knew if the dike were breached, the Hickmans' land could not take all the water. He sought no professional advice on the consequences of breaching the dike. The court specifically found that Hunkins' actions in opening the irrigation dike were capricious and irrational, after he was requested not to open the dike by Hickman.

Immunity is an affirmative defense which places the burden on Hunkins to prove the defense. The Nebraska Supreme Court has held, "It is elementary that the burden of proof is upon the plaintiff to prove those things which constitute the necessary elements of his cause of action, and the defendant bears the burden of proving those things which constitute affirmative defenses." *Moudry v. Parkos*, 217 Neb. 521, 525, 349 N.W.2d 387, 390 (1984). Hunkins failed to prove that his act of breaching the dike was within the scope of his office or employment, and in fact, his own testimony showed that his actions were for his own self-interest.

## INSTALLATION OF THE CULVERT

We next address the question of liability of Hunkins regarding his personal actions in installing the culvert under his driveway, which resulted in the drainage of 200 acres of water onto Hickmans' land. For the reasons set forth above, we hold that the court was correct in finding that Hunkins was negligent

when he replaced an old plugged culvert on his land and diverted water from 200 acres onto Hickmans' land, which proximately caused damage to Hickmans in the amount of $29,729.

The obligation of the upper proprietor to discharge surface waters in a reasonable and careful manner and without negligence has been the law of this state since at least 1893 and continues to be the law of this state because the reason for the rule still exists. A landowner has a duty to use his property so as to not unnecessarily and negligently injure his neighbor. *Lincoln & B. H. R. Co. v. Sutherland, supra.*

Hunkins' reliance upon Neb. Rev. Stat. § 31-224 (Reissue 1988) is misplaced. If Hunkins had a duty to keep his drainageway clear of all obstructions, his failure to replace the old plugged culvert caused the ponding of the 200 acres north of the replaced culvert. Allowing the old culvert to become plugged would be a proximate cause of the ponding of the surface waters and would be evidence of his negligence in draining the water onto Hickmans' land without being reasonable or careful in doing so.

*Tent Co. v. Winston-Salem*, 29 N.C. App. 297, 224 S.E.2d 257 (1976), cited by appellant, is readily distinguished in both the facts and the law. The flooding of the plaintiff's property occurred because the city removed grilles and protective devices from the culvert installed. This action allowed tires and other debris to enter the culvert and flow into plaintiff's culverts, thereby blocking the culverts and causing the water to pond and flood plaintiff's property. There is clearly enough water law in Nebraska without the necessity of adopting the law of North Carolina, which does not indicate whether the draining of surface water on a subservient estate may be done without the requirement that it be done reasonably and carefully and without negligence.

### DAMAGES CAUSED BY HUNKINS

Hunkins negligently breached the dike and negligently installed the culvert; therefore, his actions were responsible for all of the flooding of Hickmans' property, and Hunkins is liable for all damages found to be proximately caused by his

negligence and that have been proven by a preponderance of the evidence. We agree with the trial court's finding that Hunkins' actions in breaching the dike were capricious and irrational, and we find that Hunkins' actions were not within the scope of his employment and that such actions were motivated by self-interest. We, therefore, find that Hunkins is liable for the damages caused by the breach of the dike in the amount of $3,325 and for the damages caused by his negligent replacement of the culvert in the amount of $29,729, as found by the trial court.

## CROSS-APPEAL OF HICKMANS

We find that the trial court properly determined that the damages set forth in Hickmans' cross-appeal were not proven by a preponderance of the evidence. There was insufficient evidence adduced by Hickmans to adequately prove the amount of such damages. In an action at law tried without a jury, it is not the role of the appellate court to resolve conflicts or reweigh the evidence; the court will presume that the trial court resolved any controverted facts in favor of the successful party and will consider the evidence and permissible inferences therefrom most favorably to that party. *Garza v. Maaco Auto Painting & Bodyworks*, 230 Neb. 341, 431 N.W.2d 629 (1988). The factual findings of the trial court in a law action have the effect of the findings of a jury and will not be set aside unless they are clearly wrong. *Corman v. Musselman*, 232 Neb. 159, 439 N.W.2d 781 (1989).

The court's finding that the other damages set forth in the cross-appeal of Hickmans were not proven by a preponderance of the evidence was not clearly wrong. We, therefore, affirm the decision of the trial court and dismiss the cross-appeal of Hickmans.

The decision of the trial court is affirmed in part and reversed in part, and the cause is remanded to dismiss the judgment against the Township and to enter judgment against Hunkins according to this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.