[Civ. No. 8379.   Third Dist.   June 15, 1954.]

PROVIDENT IRRIGATION DISTRICT et al., Respondents,
v. SAMUEL CECIL et al., Appellants.

Duard F. Geis and Virgil O'Sullivan for Appellants.

Minasian & Minasian and P. J. Minasian for Respondents.

VAN DYKE, P. J.—In this action two owners of land within an irrigation district joined with the district in an action brought to obtain mandatory and prohibitory injunctions against defendants, who also owned land within the district.

Responsive to the pleadings, the trial court found the following: Provident Irrigation District is and at all times mentioned in the complaint was an irrigation district organized by virtue of law. The north boundary of defendants' land was the south boundary of Carriere's land and his north line in turn was the south line of Lambert's. The lands of the three owners sloped from north to south and had been drained by two wide and shallow natural channels coursing through the Lambert and Carriere properties and onto and across the lands of defendants. These drains in a state of nature accommodated the flow of rain and surface waters brought to or falling upon the lands within their drainage areas. These drains converged at a point in the northerly portion of the defendants' lands and led thence southerly until their waters emptied into Willow Creek, a well-defined and natural channel. For more than five years before this action was begun the three plaintiffs, with their predecessors in interest, had continually, openly, notoriously, adversely and under claim of right, used, improved and maintained the said drains and through them had drained the summer runoff of excess irrigation water and waste water from the Lambert and Carriere lands and from lands lying north of them. In order to carry out the duties imposed upon it by law to provide drainage for land within its boundaries the district had cleaned and dredged the channels of the drains and in particular in the years 1939, 1942 and 1945 had caused them to be dug to a level of 82.6 feet S.V.I. Co. datum at their junction with Willow Creek and from that level, at that point, had caused the drains to be dug out and maintained to constant hydraulic grade northerly across the lands of defendants and of Carriere and Lambert. The channels of these natural drains had been so improved by the district, and had been, for more than five years, used by the district for the aforesaid purposes. In December of 1948 the defendants constructed a levee or dike along the northerly boundary

of their lands and across the drains and thereafter had so leveled and planed their land as to fill in the drains. The levee which the defendants so erected made no provision for escape of waters flowing in the drains. But after this action was begun, the defendants made an insufficient opening in the levee and constructed a toe ditch along it to combine both drains. The defendants merged the two channels at a point where the most westerly thereof entered their lands and from that point, after action was begun, defendants had constructed a new channel for the combined drains leading in a more direct route across their lands and into Willow Creek. However, the toe drain, the opening through the levee for the combined drains, and the channel made to carry the water to Willow Creek were insufficient both as to cross section and depth to accommodate the usual flow of waters and were not on a hydraulic grade. The result was that the waters were impeded and prevented from flowing across defendants' lands as they had theretofore done. This hindrance in flow prevented the accustomed movement of both summer irrigation water and the normal high winter water having its source from rainfall on the lands within the area so that the waters were backed up and impounded. On the lands of Carriere the result was substantial damage to his lands, and to crops planted thereon. The waters so impeded were not flood waters, although often flood waters inundated and covered all of the lands in question. These floods, however, were temporary. The lands soon emerged and the waters returned to the natural channels from which the overflow came. A cash judgment was awarded Carriere. Judgment was given the plaintiffs in substance as follows: The court ordered defendants "to forthwith provide, dig, and deepen the channels for drains 27 and 27a [being the two drains heretofore discussed] across the hereinafter described land of defendants, to a condition, width, grade and depth, and remove that portion of the levee or dyke constructed by defendants . . . across the northerly boundary of the said hereinafter described land of defendants to the extent necessary so that said drains and openings in said levee will provide drainage equal to and of a capacity equal to that of drains 27 and 27a as they existed immediately prior to the acts of defendants in filling in and damming off said drains; . . ." The defendants were further ordered generally to provide sufficient facilities to receive and transport across their lands "the surface waters naturally and normally flowing through

16

and from the property of plaintiffs [here describing the lands of Carriere and Lambert]; such facilities to be of sufficient capacity and depth to receive and transport such surface and excess irrigation and crop drainage waters from the property of plaintiffs that may flow to or from the same, so that said waters may flow uninterrupted and unimpeded to and across said hereinafter described land of defendants as the same were accustomed to flow through the said drains 27 and 27a to and upon and through said hereinafter described land of defendants prior to the acts of the defendants in filling in and blocking off said drains." Defendants were further prohibitorily enjoined from thereafter filling in or damming up the drains or facilities to be provided under the mandatory order and from in any way interfering with the flow of water in the drains north of defendants' lands so as to injure or interfere with the use of the lands of Carriere and Lambert and from in any way interfering with or preventing the district from maintaining or cleaning the drains or facilities after the same had been so restored by the defendants pursuant to the mandatory order. From this judgment defendants have appealed.

It appears that the court has adjudged all three plaintiffs to have established prescriptive rights, not only to flow across the land of defendants waters naturally draining through them from the lands of Carriere and Lambert, but also to use the drains for the purpose of discharging into them and having borne away by them excess irrigation waters without limit as to amount of the latter. ▇▇ Carriere and Lambert, since there were natural drains, had the right to have them maintained in their natural state to carry off waters naturally flowing through them and also to discharge into them such reasonable quantities of excess waters as could be discharged and borne away without injury to defendants' lands. (*Fell* v. *M. & T. Inc.*, 73 Cal.App.2d 692 [166 P.2d 642].) But the limitations as to discharging irrigation waters into natural drains noted in the cited case and in other cases decided before and after that case is an important limitation. Anything in excess of reasonable and noninjurious discharge of irrigation water upon the lands of a lower owner is wrongful. To prove a prescriptive right to discharge irrigation waters into the drains without limitation required evidence that this hostile act had been so long continued as to give rise to a prescriptive right to do so. The trial court found such to have been the case.

Appellants contend that there was no evidence sufficient to support a finding of such a prescriptive right in Carriere and Lambert. This contention must be sustained. There was no evidence whatever of any adverse and hostile use exceeding a rightful use of these drains by those two plaintiffs. A use of the drains to discharge and carry away waters accumulated in rice culture was shown, but it was not shown that this use exceeded a reasonable and noninjurious use. Such use as was shown could not have been enjoined by defendants and such use could not give rise to prescriptive rights since it could not be hostile or adverse.

There is another reason why the finding of prescriptive right in Carriere and Lambert is not supported by the evidence. It was shown and found that for many years the district, in the exercise of its duties not only to provide the land within its boundaries with irrigation water but also to maintain sufficient drainage channels to protect the district lands from injury therefrom, had adapted these natural drains to such purposes and in so doing had rectified their channels and maintained them in condition to function as drainage canals. Indeed, the testimony was that when the district was organized these natural drains were already being used by a predecessor district for the same purposes and that when the properties of the predecessor district were conveyed to plaintiff district the deeds purported to convey easements over and along these drains for drainage purposes. Disregarding entirely the findings that the use made by the district of these drains had been adverse and had so adversely continued for more than five years it is apparent from the findings that these drains had long been appropriated to public use by the district. ■ The findings bring into application the rule declared in *Peabody* v. *City of Vallejo*, 2 Cal.2d 351, 377-378 [40 P.2d 486], and in *Gurnsey* v. *Northern Calif. Power Co.*, 160 Cal. 699 [117 P. 906, 36 L.R.A.N.S. 185], that where a person or legal entity such as respondent district, which is in charge of a public use and has the power of condemnation has gone upon private property, constructed works in furtherance of its public use with at least the acquiescence of the owner and has put such structures to public use, the owners cannot disturb the possession so taken and are relegated to an action to recover compensation for the taking. It appears from the findings here that such a situation had long existed and therefore that any right of appellants to object to the use being made by the district of the drains

was gone. ■ It follows as a corollary that upstream owners in the district whose irrigation waters were being disposed of through what had become the district's drainage facilities could not, through the use of those facilities, obtain any adverse rights and this for the same reason we have referred to before that the use was not one which, under the circumstances, the appellants could object to or restrain. To prove a prescriptive right, therefore, Carriere and Lambert would have had to show that in respect of drainage of irrigation waters they had made use of these drains over and above merely emptying into them irrigation waters which the district was empowered to receive into the drains and to convey across appellants' lands. Insofar, therefore, as any prescriptive right in Carriere and Lambert be concerned the findings are not supported by the evidence and to that extent will not support the judgment.

Insofar as the judgment restrains appellants from interfering with the district's drainage works, that is, with the use of these improved natural drains for carrying away natural or irrigation waters from the lands of upper owners, the judgment must be affirmed. The district having entered upon, occupied and improved the drains and devoted them to the performance of its duties to provide drainage for the lands within its borders, the defendants have no right to interfere therewith and if the taking so resulting has not been compensated for they are relegated to any right they may have to enforce payment therefor; but they must otherwise submit to the established public use. (*Peabody* v. *City of Vallejo, supra.*) Appellants' interference with these public drains could be enjoined by respondents Lambert and Carriere since they suffered private injury.

Appellants contend that the artificial structures installed by them did not damage plaintiffs. There are two answers: One is that appellants, regardless of damage, had no right to enter upon and in anywise change the character of the location of the public drains being operated by the district. It was not for them by unilateral action to merge the drains along their northern line nor to discharge the waters so collected through a different channel from that being used by the district. The other answer is that there was evidence of actual damage. It was testified that by appellants' structures water was backed up over the lands of Lambert and Carriere.

The district upon this point, however, maintains that the court in its judgment, which the district has not appealed from, has gone no further than to say to the appellants that, accepting the toe drain and the new channel, they must do whatever is necessary to make them perform the work formerly done by the established drains. Respondents say:

"The judgment does not require relocation of the drains in the locations they formerly occupied. The court refused to grant that relief. There is not one word in the judgment to support appellants' contention that the drains must be restored in their original locations. All references are to depth and capacity.

"The judgment requires the performance of two acts:

"The first is to provide openings in the levee constructed across the north boundary of appellants' property of a size sufficient to let the water through. Particularly is this true with respect to Drain 27a. Appellants blocked it off completely at their north line and dug a small toe ditch at right angles. The result is that water flowing down this drain hits a solid levee and is forced to make a right angle turn and proceed through a narrow toe ditch to join Drain 27. Necessarily, the right angle turn and levee behind the turn and the too narrow toe ditch impedes the flow of winter water. The testimony proved this and the court, in addition, at the request of both parties viewed the premises. Thus the first requirement of the judgment is an opening in the levee opposite Drain 27a to let the high water coming down that drain through, instead of impounding it on the property of respondent Carriere. There is no requirement of a ditch through the levee at this point, merely an opening through the levee down to surface ground level. Likewise at the intersection of Drain 27 and the levee. There is an opening at this point but it is inadequate. The judgment requires this opening to be made adequate so as not to restrict the drainage below what Drains 27 and 27a provided before appellants' acts reduced their capacity.

"The second requirement of the judgment is that the drains be dug and deepened to provide drainage *equal* to that existing in Drains 27 and 27a prior to the said acts of appellants. Nothing in the judgment requires the old drains to be replaced. It merely requires comparable drainage."

Certainly the mandatory injunction issued does not expressly order appellants to reestablish the old drains. It orders appellants to "deepen the channels for drains 27 and

27a across the hereinafter described land of defendants . . . to the extent necessary so that said drains . . . will provide drainage equal to and of a capacity equal to that of drains 27 and 27a as they existed immediately prior to the acts of defendants in filling in and damming off said drains.'' We agree with respondents that this language does not direct appellants to reestablish the old drains. ██ The court has directed generally that appellants provide drainage equal to that in every way which they destroyed. It has not specifically told them just how they are to do this. We cannot, therefore, agree with the respondents that, so far as the court order is concerned, appellants must open their levee at the point where their toe drain picks up the water flowing in drain 27a and carries it over along appellants' north line to drain 27 and thence through their levee. It may be that such an opening in the levee will be necessary. The court has not yet said so. There was evidence that this toe drain, by reason of its right angle turning of the water in drain 27a, operated so as to impound the water on respondent Carriere's land. Appellants conclude that this can only · be rectified by opening the levee at that point. That may be, but it is a detail which has not been settled by the court's mandatory order and which the court will be authorized to rule upon when the case is returned to it.

As so construed, we find nothing objectionable in the mandatory order and hold that it is supported by the findings which are in turn supported by the evidence which is sufficient to justify the mandatory order made. No particular objection is made to the prohibitory order which simply restrains the appellants generally from impeding or interfering with the drainage theretofore enjoyed by respondents.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.