THOMAS J. CLARE, SR., AND TRUMAN CLARE, JOINT EXECUTORS OF THE ESTATE OF ALICE K. CLARE, DECEASED, APPELLANTS, v. COUNTY OF LANCASTER, NEBRASKA, ET AL., APPELLEES.

71 N. W. 2d 190

Filed June 24, 1955. No. 33739.

*Lloyd E. Chapman,* for appellants.

*Elmer M. Scheele, Frederick H. Wagener, Dale E. Fahrnbruch, Richard S. Harnsberger, Edward F. Carter, Jr., Fred Vette,* and *Jack M. Pace,* for appellees.

Heard before SIMMONS, C. J., YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and KOKJER, District Judge.

YEAGER, J.

This action as originally instituted was by Alice K. Clare, plaintiff, against the County of Lancaster, Nebraska, and Louis W. Weaver, defendants. After the action was instituted, on motion of the defendant County of Lancaster, the County of Gage, Nebraska, Carl G. Hartwig, Martha Hartwig, Edgar C. Hartwig, and S. Ileene Hartwig, were made additional parties defendant.

At the time the action was instituted, which was May 25, 1950, the plaintiff was the owner of the west half of the southwest quarter of Section 31, Township 7 North, Range 7, Lancaster County, Nebraska. At that time Carl G. Hartwig and Martha Hartwig, husband and wife, were the fee simple owners of the north half of the northwest quarter and the northwest quarter of the northeast quarter of Section 6, Township 6 North, Range 7 East of the 6th P. M., in Gage County, Nebraska. Edgar C. Hartwig and S. Ileene Hartwig were at the time tenants on the land. On January 16, 1951, Carl G. Hartwig and Martha Hartwig conveyed the land by deed to Edgar C. Hartwig and S. Ileene Hartwig. The land of the Hartwigs is immediately to the south of the land of the then plaintiff and is separated by a section-line road. This section line is also the dividing line between the Counties of Lancaster and Gage. To the south of the section line the road is in the County of Gage and to the north it is in Lancaster County. By agreement between the counties the road was maintained separately for alternate distances of 1½ miles each, except in the case of bridges which were constructed and maintained by dividing the cost equally between the counties. That portion which separated the two described bodies of land was maintained by the County of Lancaster.

By the petition on which the case was tried the plaintiff alleged in substance that the Counties of Lancaster and Gage were political subdivisions of the State of Nebraska and that it was the duty of the two

counties to maintain the highway; that the defendant Weaver was the duly elected county surveyor of the County of Lancaster and had general supervision of the highways of the County of Lancaster; that prior to and in the summer of 1949 the section-line road and the south line of plaintiff's land descended from the southeast corner to the southwest corner of plaintiff's land and into a draw or creek on to the west thereof and that the road was graded in such manner that the water coming from the east and south came down a road ditch in such manner that it was carried west beyond plaintiff's land; that in the summer of 1949 the highway was regraded and greatly elevated; that a culvert was placed under the grade of the highway from south to north to carry the water across onto the land of plaintiff which had been carried previously to the west; that a ditch was constructed on the south side of the highway which was diked or dammed so as to prevent the flow of the water to the west and to cause it to flow across onto the land of plaintiff; that the defendants Hartwig terraced their land so that water which previously flowed to the west past plaintiff's land was caused to be diverted and to flow across the highway to the north onto it; and that in May 1950 there was a heavy rainfall which washed out the culvert and the dike in the ditch along the highway, all to the injury and damage to the land of the plaintiff. The plaintiff further substantially alleged that after the culvert and dike were washed out the defendant counties threatened and planned to restore the culvert and dike.

In consequence of all of this the plaintiff prayed for restraining injunctive relief against the defendant counties from the restoration and reconstruction of the culvert and drainage across the road, against the defendants Hartwig from the diversion alleged, and for mandatory injunctive relief requiring the defendant counties to restore the drainage along the highway from east to west as it existed prior to the time it was changed in

1949. She also prayed for a judgment for the alleged damage to her land.

In a separate answer the defendant County of Lancaster substantially, to the extent necessary to set it forth here, said that the highway was reconstructed in 1949 to a height of 1 foot to 18 inches above the adjoining land; that at about the place where the culvert was placed the natural drainage was from the south to the north across the road and onto plaintiff's land; that the construction and placement of the culvert was to cause the water to flow across the road onto plaintiff's land in the natural course of drainage and to prevent the washout of the roadbed in the road; and that a dike was constructed to the west of the culvert but that the dike did not check the flow of any water which would have flowed to the west thereof in the course of nature.

The defendant County of Gage and the defendants Hartwig denied that anything done by them diverted the flow of water contrary to the flow in the course of nature onto plaintiff's land.

During the progress of this litigation the plaintiff died and the action was revived in the name of Thomas J. Clare, Sr., and Truman Clare, joint executors of the estate of Alice K. Clare. They became substitute plaintiffs and they are the appellants herein. They will be referred to as plaintiffs.

The case was tried to the court, at the conclusion of which a decree was rendered denying any relief to the plaintiffs. Motion for new trial was duly filed and overruled. The appeal is from the decree and the order overruling the motion for new trial. There are four assignments of error but none of them will be specifically referred to since they deal collectively with the one question of whether or not under the facts in the light of recognized legal and equitable principles the plaintiffs are entitled to relief.

Basically, as already indicated by the outline of

the pleadings, the action is to prevent the reconstruction of the culvert and to require the defendants to make provision for the passage of the water from the south and east in such manner that it will not flow across the highway onto the lands of plaintiffs.

To sustain their contention the plaintiffs adduced evidence in substance that their land lies immediately to the north of the highway in question which is a section-line road and is on the dividing line between the defendant counties and that it extends from east to west for a distance of about 1,070 feet; that there was a drop in the elevation from the east to west of about 20 feet; that for a distance at least to a point about 200 feet west of the point where the culvert was located the slope of the land was from the south and southeast to north and northwest from the land to the south of the highway onto the lands of the plaintiffs; that prior to the summer and fall of 1949 the road was a graded dirt road with grader ditches along both sides; that in this condition no water flowed across the road onto plaintiffs' lands; that in the summer and fall of 1949 the County of Lancaster on behalf of the two counties re-graded this road and in so doing elevated and widened the roadbed the entire distance along this land; that it was elevated about 18 inches to 2 feet; that in so doing they graded out road ditches on both sides; that about 150 feet west of the location of the culvert and in the south road ditch a dam or dike was placed to prevent water from flowing on westward along the south side of that road; and that a cut was made across the road and the culvert in question, which was 36 feet long and 18 inches in diameter, was placed in this cut the fall of which from south to north was 3 feet.

The witnesses for plaintiffs say that this caused the water from the south and east to flow across the road onto plaintiffs' lands to their damage whereas prior thereto no water had flowed across but that it had

previously flowed down the road ditches and on past these lands.

It should be said here that there is no evidence that the culvert as such ever caused any damage or had anything to do with any damaging flow of water. The culvert was plugged before any damage of which complaint is made occurred.

The plaintiffs' evidence further indicates that in May 1950, after the culvert had been plugged and the dike cut, there was a heavy rain which washed out the culvert and cut a channel across the road through which water ran onto plaintiffs' land. This caused a channel to be cut thereon and the channel has continued to be enlarged by water which has flowed in that direction since that time.

In addition to this witnesses for plaintiffs say that the defendants Hartwig have terraced their land as a result of which water has been diverted causing it to flow onto plaintiffs' land at the point in question here contrary to its natural course.

Certain of the contentions made through the evidence of plaintiffs are definitely fallacious. The evidence as to the topography in this area discloses without question that the location of the culvert was the approximate low point of a path over which, in the course of nature, flowed the surface water from a drainage area extending east and south and about 200 feet west of the culvert. The over-all drop from east to west was about 20 feet but it was not uniform. There was a drop to the area where the culvert was placed and then a gradual rise to the west of about 2 feet and then a decline on westward. There was no evidence that there ever had been a design to construct a drainage way to the west but only to grade sufficiently to condition and repair the old dirt road. Thus naturally and of necessity the water coming down, if it flowed away at all, flowed across the road unless and until it got high enough to flow over the westward elevation in the road ditch.

In addition to this there was evidence of witnesses on behalf of the defendants running back as far as 60 years that this location had at all times been the regular passage for water coming from the south and east. This evidence came from a witness who had lived in the immediate vicinity for 69 years, neighbors, and men who had over a long period of time been engaged in the care and maintenance of this road.

From the greater weight of evidence the conclusion is inescapable that at all times prior to the summer and fall of 1949 the course of the flow of water from the southeast, the south, and from a small area southwest was across this road onto plaintiffs' land.

It follows then that by the action of the defendant counties there was no diversion, except the possibility of diversion by the dike or dam which was placed in the south road ditch about 150 feet west of the culvert, but only attempted confinement of passage of water in a culvert, whereas theretofore the passage was spread over a wider area, the width of which at any particular time has not been accurately described.

The counties had the right to reconstruct this highway in 1949. No one questions this right. This they did. In this it was their right and duty to provide for the flow of the water as it was wont to flow in the course of nature theretofore. Crummel v. Nemaha County, 118 Neb. 355, 224 N. W. 864; Clark v. Cedar County, 118 Neb. 465, 225 N. W. 235; Leaders v. Sarpy County, 134 Neb. 817, 279 N. W. 809; Webb v. Platte Valley Public Power & Irr. Dist., 146 Neb. 61, 18 N. W. 2d 563; McGill v. Card-Adams Co., 154 Neb. 332, 47 N. W. 2d 912.

The plaintiffs as owners of the lower land were, under the facts of this case, required to bear the burden of receiving the water collected upon the upper land and naturally flowing therefrom. Leaders v. Sarpy County, *supra;* McGill v. Card-Adams Co., *supra.* This is not a departure from the rule announced in Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W.

2d 160, 160 A. L. R. 1154, that a proprietor of land may defend against the encroachment of surface water. This case does not present any question of the right of an owner to defend against surface water. It presents only the question of the rights and liabilities of counties in providing for the passage of water over highways.

A restriction upon the right of the counties in the reconstruction of the road and in providing for the passage of water was that they should not be guilty of negligence. Fairbury Brick Co. v. Chicago, R. I. & P. Ry. Co., 79 Neb. 854, 113 N. W. 535, 13 L. R. A. N. S. 542; Webb v. Platte Valley Public Power & Irr. Dist., *supra.*

As pointed out the counties, in the exercise of their rights, placed the culvert across the highway. In this there was no diversion. Whether or not this would have reasonably and properly provided for the flow of water is not known and cannot be ascertained from the record since it was plugged and washed out before it ever had an opportunity to function. As pointed out, in May 1950 there was a rain of unusual proportions as a result of which the culvert and its plug were washed out. The passage since then is the channel across the road which was made when the culvert was washed out.

As to the dam or dike in the south road ditch it cannot well be said that this caused any diversion. By the greater weight of evidence it reasonably appears that its elevation was not above the highest natural elevation of the land to the west of the natural passage of water from the south to the north. Its only effect was to prevent the flow of water from this watershed over into the watershed to the west.

As a matter of information this dike or dam was cut from its top to the bottom of the road ditch before the incident of May 1950 to a width estimated by plaintiffs' witnesses at from 6 to 10 inches and by defendants' witnesses from 18 to 30 inches and that since it has been for the most part, if not altogether, washed away. It has never been replaced.

It appears by the greater weight of the evidence that there has been no diversion of water by the defendant counties. It further appears by the same weight of evidence that the counties have not up to this time been guilty of negligence in the efforts made to carry the water across this road.

As to the defendants Hartwig, they being the owners of land to the south of the road, it is claimed that they diverted water into this drainage way by artificial structures on their land. There is some evidence to this effect, and we think that in this respect the evidence preponderates in favor of the plaintiffs. Witnesses for plaintiffs testified that in this manner water from several acres was diverted. A witness for the defendants gave it as his opinion that water from only .34 of an acre was diverted.

It is clear that water from some area and in some amount was diverted. It does not follow however from this that the plaintiffs are entitled to relief. The true rule in this connection is that if surface water flows in a well-defined course in its primitive condition it cannot be arrested or diverted in a different direction or otherwise interfered with to the injury of another landowner. Todd v. York County, 72 Neb. 207, 100 N. W. 299, 66 L. R. A. 561; Bussell v. McClellan, 155 Neb. 875, 54 N. W. 2d 81, on rehearing, 156 Neb. 189, 55 N. W. 2d 606; Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602.

In other cases the element of injury has not been specifically contained in the statement of the rule. See, Hengelfelt v. Ehrmann, 141 Neb. 322, 3 N. W. 2d 576; Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129; Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350. It is however an element of the rule and implicit in the language employed in the statement in these cases.

While there is evidence of diversion there is none of injury or damage flowing therefrom. In the absence of such evidence the plaintiffs are entitled to no relief against the defendants Hartwig.

The decree of the district court is affirmed.

AFFIRMED.