HUBERT G. MUFF, APPELLANT, v. MAHLOCH FARMS CO., INCORPORATED, ET AL., APPELLEES.

167 N. W. 2d 73

Filed April 11, 1969. No. 37057.

Jack L. Craven and Herman Ginsburg, for appellant.

Steinacher & Vosoba, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is a suit in equity by Hubert G. Muff, against Mahloch Farms Company, an adjoining upper proprietor, to enjoin the upper proprietor from casting irrigation water on the lower proprietor's land. The trial court found for the defendants and denied an injunction. The plaintiff has appealed.

The plaintiff is the owner of that part of the northeast quarter of Section 9, Township 8 North, Range 4 East of the 6th P.M., in Saline County, Nebraska, lying south and west of the Big Blue River, comprising 138 acres. The principal defendant, Mahloch Farms Company, is the owner of the northwest quarter of said Section 9 which abuts plaintiff's land on the west. The Mahloch land has a higher elevation than plaintiff's land and plaintiff's land is subject to the flow of surface waters across the Mahloch land and adjoining lands totaling approximately 300 acres. The adjoining lands to the north of Mahloch

are owned by one Keller and play a prominent part in the present controversy.

A natural drain, admitted by the parties to be such, arises along the west line of the Mahloch land and turns east at the northwest corner of Section 9. A short distance east of this corner, the drain dips south in a semicircular fashion onto the lands of Mahloch and crosses back north into the Keller land within the northwest quarter of the northwest quarter. This section of the natural drain is referred to in the record as the horseshoe bend. The drain proceeds north into the Keller land, turns sharply to the south after a confluence with a natural drain from the northwest which carries no water from the Mahloch land, and proceeds into and across the northeast corner of the Mahloch land. At or near this point the drain flows into and across plaintiff's land in a well-defined drainage channel or draw to the southeast into the Big Blue River. There is evidence that surface waters flow north into this drain and other evidence that some surface waters flow to the southeast in what the plaintiff designates as a watercourse. There is little or no dispute as to the location of this natural drain and the directional flow of surface waters that find their way to or are dumped into it.

At the time of the commencement of this suit, the defendant was engaged in grading his land in preparation for pump irrigation. The defendant, Glen Schwisow, was the contractor in charge of the land leveling operation and has no other interest in the suit. It is the contention of the plaintiff that the land leveling will change the course of surface waters through existing natural drains and dump them on plaintiff's land to his damage. It is also asserted that the leveling of the land with a grade from west to east in the direction of plaintiff's adjoining lands, will cast both surface and irrigation waters on plaintiff's land greater in amount and velocity than existed in a state of nature to plaintiff's damage. It is further contended that a ridge of land running north and

south exists to the west of the center of defendant's land which is to be cut down and used to fill existing natural drains, thereby permitting surface waters, and irrigation water as well, to flow east where they were not wont to go in a state of nature. It is also asserted that the leveling of the land will have the effect of closing the mouth of the horseshoe bend on defendant's land and, by shortening the natural drain at this point, will increase the velocity of such water and result in a pile up of the water where it flows into the big draw with a consequential erosion of plaintiff's land. These contentions of the plaintiff are supported to some extent at least by the testimony of an engineer called by the plaintiff.

The north 80 acres of the Mahloch land drain to the east and north into the natural watercourse hereinbefore described. The south 80 acres drain mostly to the southeast and have little bearing on the issues of this case because its surface waters reach the Big Blue River by watercourses that do not enter plaintiff's lands. The north 80 acres and approximately 250 acres of land belonging to adjacent landowners drain into the natural watercourse previously described and is generally referred to as the south drainage area. Surface waters on other more distant lands belonging to adjacent landowners in an area of about 465 acres, which includes none of the Mahloch land, flow onto the Keller land and forms what is generally referred to as the north watercourse. These two watercourses meet on the Keller land, flow back into the northeast corner of the Mahloch land, are cast into the big draw, and are carried to the Big Blue River to the southeast across plaintiff's land.

The evidence shows that Mahloch had commenced the grading of the north 80 acres of his land for the purpose of preparing it for pump irrigation when this suit was started. It is not disputed that the land sloped from the west to east and that the grade of the slope was reasonable for irrigation purposes. The plan of the irrigation project was to water from the west end to the

east end by running the water between the crop rows. To do this, defendant intended to fill the horseshoe bend which invaded his land and relocate it with a ditch on the north boundary on his own land. The horseshoe bend would be filled and his crop rows would conduct the irrigation water across the land from west to east. Such a construction would carry the surface water in the horseshoe bend from the point of entry to his land to the point of exit. Plaintiff contends that this would damage him when the water was dropped into the big draw some distance to the east. The evidence will not sustain such a conclusion. The testimony of expert engineers was that this straightening of the watercourse would not increase the volume of flow and that any increased velocity due to the shortening of the watercourse would be so negligible as not to change the result. The evidence reveals no proper cause of complaint by plaintiff by the elimination of the horseshoe bend along the north line of the north 80 acres.

. Plaintiff's next contention is that if irrigation water is caused to flow between the crop rows from west to east, that the waste water spilling out at the ends of the rows would flow onto the lower adjacent lands of the plaintiff to his damage. The defendant testified, however, that it was his intention to construct a ditch and terrace across the east end of the 80 acres on his own land and conduct such waste waters north to the watercourse heretofore described and dump such waters into the natural drain from where it would flow in the big draw across plaintiff's lands into the Big Blue River. This was recognized as a feasible and proper method of controlling these waste waters without encroachment upon plaintiff's farm operations. It was also pointed out that this method of handling would eliminate a watercourse presently carrying water onto plaintiff's lands to the south of the watercourse in the northeast corner of the north 80 acres. In addition thereto, the defendant testified that if for any reason water was ac-

cumulated and cast upon plaintiff's lands, he would install a sump pump and reuse the water for irrigation purposes, a method in rather common use by pump irrigators under such circumstances. Defendant's engineer testified that this was a recognized method of controlling wasted irrigation water. We think the evidence sustains the findings of the trial court on this issue.

Plaintiff complains that he is injured by water being conducted north from what is referred to as a "lagoon" located on defendant's land. The "lagoon" is a low area to the west of the old building site on the north 80 acres. It consists of an area of 1½ acres and results from a ponding of diffused surface waters in wet weather. When it fills up and overflows some of the water goes north to the south drain, but more goes to the south without reaching plaintiff's land. The grading operation would fill the "lagoon" in order for irrigation water to flow through from west to east in accordance with the general irrigation plan. Plaintiff contends that the overflow water that formerly drained south will drain north and increase the amount of water he will receive in the big draw. We point out, however, that the source of water in the "lagoon" area was diffused surface waters which the defendant may use in such manner as he sees fit, provided of course that he does not concentrate them and dump them unlawfully on the land of another to his damage. He may change their course, store them, or reuse them, but he may divert them on the land of another only through depressions, draws, or other drainways as they were wont to flow in the state of nature.

The overall picture in this case shows that the north 80 acres are being graded to make the land suitable for irrigation. The disposition of surface waters arising on the land or carried on the land is consistent with Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195, and cases therein cited.

The primary issue remaining relates to the use of the land in increasing production of crops and the enhance-

ment of the value of the land by pump irrigation. When the suit for an injunction was commenced there was no irrigation on the farm, but prior to the hearing on the merits an irrigation well had been drilled by the defendant. No water had been applied to the land at the time of trial. It is asserted, however, that plaintiff would be damaged by wasted irrigation water. The evidence of the expert witnesses is to the effect that wasted irrigation waters in the instant case would be trivial and nondamaging to the plaintiff, a position which is sustained by the evidence in the case.

The fundamental question on the issues before the court is whether or not an anticipated damage which may or may not occur affords a basis for injunction. The evidence of the defendant that if waste irrigation waters caused damage to the plaintiff's lands, he would pond and reuse them for irrigation purposes by means of a sump pump is a fact to be considered. The trier of fact believed defendant's general plan of operation as being nondamaging to the plaintiff. We find no reason to disagree with these factual findings and the consequent dismissal of the suit. It is fundamental that an injunction will not lie if the right thereto is unclear or the damage complained of is nonexistent. State v. Merritt Bros. Sand & Gravel Co., 180 Neb. 660, 144 N. W. 2d 180. It appears to us that plaintiff's right to an injunction is unclear as being based on an unwarranted anticipation of damage. Here the plaintiff has suffered no damage from waste irrigation water because there has been none, nor will the evidence sustain a finding that defendant's irrigation plan will result in any damage in the future. The right of an owner to apply irrigation water to land is recognized as good husbandry of natural resources and if no damage or threat of damage from such water is established by a party seeking injunctive relief, injunction will be denied. Spurrier v. Mitchell Irr. Dist., 119 Neb. 401, 229 N. W. 273.

Plaintiff complains of the form of the judgment of dis-

missal entered in that any future application for an injunctive order to restrain the defendant from an improper disposition of waste irrigation water to the damage of the plaintiff would be subject to the defense of res judicata. The basis for the dismissal is not shown in that no findings of fact were made on which the order of dismissal was predicated. Under such circumstances we cannot say that plaintiff's complaint is not without logical support. Here the defendant has testified to specific procedures to protect the plaintiff from damage from defendant's irrigation waters. The suit ought not to have been dismissed without plaintiff being afforded protection against the failure of defendant to carry out his proposals for protecting plaintiff against damages resulting from the unlawful encroachment of irrigation water.

It is a fundamental principle of law that material facts or questions which were in issue in a former action and were there admitted or judicially determined, and all points which properly belonged to the subject of litigation which might have been brought at the time with reasonable diligence, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action. Wischmann v. Raikes, 168 Neb. 728, 97 N. W. 2d 551. Adequate findings of fact, even in a judgment of dismissal, serve to properly limit the broad sweep of the rule of res judicata and to properly protect the rights of the parties in a case such as we have before us.

It appears to us that the plan of the defendant for pump irrigating his land is sustained as against the allegations of the plaintiff largely on the basis of the promised construction of the ditch and terrace across the east end of defendant's land and the ponding and reuse of waste irrigation water by means of a sump pump, all of which Mahloch testified he would do to avoid damaging the lands of the plaintiff. If this testimony was believed

and found to be true, as it evidently was, findings of fact should so state and thus make the plans testified to as a defense to injunctive relief a condition precedent, in effect, to the dismissal of the suit. To this extent, we modify the order of dismissal and affirm the judgment.

AFFIRMED.