NICKERSON TOWNSHIP, THE COUNTY OF DODGE ET AL.,
APPELLEES, v. WALTER ADAMS, APPELLANT.

173 N. W. 2d 387

Filed January 6, 1970.    No. 37270.

Lyle B. Gill, for appellant.

Sidner, Svoboda & Schilke, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action for an injunction involving the course of drainage of surface waters. The district court enjoined the defendant from allowing any water that formerly drained easterly on defendant's land from draining westerly through an excavation made by the defendant, and required the defendant to restore the excavation

to its former level. The defendant has appealed.

The defendant, Walter Adams, is the owner of a farm located principally on the Southwest Quarter of Section 17, Township 18, Range 8, Dodge County, Nebraska. A township road runs north and south along the west side of defendant's land. Plaintiff, Nickerson Township, is responsible for the construction and maintenance of the road; and plaintiff, Dodge County, is responsible for the maintenance of bridges on township roads. The plaintiff, Stena Lueken, owns the quarter section of land immediately across the road west of defendant Adams' land.

There is a drainage basin of approximately 147 acres located largely on defendant's land, and all in the south half of Section 17. The perimeter of the drainage basin is irregular. The contour of the land in the basin roughly resembles a saucer, slightly tipped to the southeast. The western rim of the drainage basin at the point involved here is roughly parallel to and some 300 or 400 feet east of the township road. Before the work done by the defendant, the elevation in this area of the perimeter was 1051.2 to 1053 feet. The lowest elevation on the perimeter of the basin was 1047.5 feet. That point was on the southeast portion of the rim and in the southeast quarter of Section 17. The natural drainage inside the basin is to the east and south. There is an area outside the basin on the west side of defendant's land. Approximately five acres of this area immediately west of the point involved here drains to the west to a ditch along the east side of the township road. Water then drains south in the road ditch near a 15-inch culvert to the southwest corner of defendant's land; under the township road; and over the plaintiff Lueken's land to reach a small creek to the west.

The lowest part of the 147 acres within the drainage basin was an area of approximately 30 acres somewhere roughly in the center of the basin. The whole area of the drainage basin drained into this inner basin both before and after the construction done by the defendant.

The exact location of this inner basin was not shown, nor is there any evidence as to the quantity of water it could or did contain. In general, it ran approximately 2700 feet east and west and was approximately 200 to 500 feet wide. In prior years, rain falling into the 147-acre drainage basin drained and collected in the inner 30-acre basin in what are referred to as lakes, potholes, or low spots in the basin. The size of the water area remaining for more than brief periods of time varied from two lakes of 3 or 4 acres each, to a single area of 15 acres. The depth of the water, presumably at the deepest point, was estimated by various witnesses as being from 2½ feet to 4 feet. The water in the low areas ultimately disappeared and the land there was replanted each year except for one year when one lake remained all summer. Replanted crops were harvested on the low areas in some years.

In times of excessive rainfall, witnesses testified that water in the drainage basin flowed east and south onto adjoining land, presumably over the low elevation in the southeast portion of the perimeter rim of the basin. There is no evidence as to how often this occurred, nor as to the amount of water which drained from the basin when it did occur. There is no evidence that any such water ever reached a natural watercourse. No water ever drained out of the basin to the west.

In the spring of 1968, the defendant hired an earth-moving contractor. He removed earth from the western perimeter of the drainage basin for a width of 70 to 100 feet and lowered the elevation at that point to 1046.3 feet. The defendant also made a ditch from that point on to the east, a distance of approximately 2900 feet. The ditch was approximately 18 feet wide, 1 foot deep at the center, and sloped up at the sides. The earth removed from the excavation on the west edge was used to fill some of the low spots or potholes in the inner basin. The elevation in the bottom of the ditch from the excavation in the perimeter on eastward fol-

lowed the general slope of the drainage basin, dropping to an elevation of 1045.5 feet at a point 900 feet east of the perimeter cut and on down to the low point of 1045 feet 1600 feet east of the cut. Elevations then rose again, reaching 1045.5 feet at a point 2400 feet east of the cut and again reached 1046.3 feet, the level of the perimeter cut, at a point 2600 feet east of the excavation. The elevation at the end of the ditch, 2900 feet east of the cut, was 1047.2 feet.

The fundamental differences here arise from the parties' differing interpretation of the evidence as to future damage. There is no evidence of any present damage. In fact, the evidence is that after a 2½-inch rain on August 9, 1968, the water in the drainage basin did not even come close to going through the excavation to the west. The plaintiffs' engineer did not know what the run-off in the drainage basin would be; how much water the 30-acre inner basin would hold; nor how much of a rain would be required before the inner basin would overflow to the west through the excavated rim of the 147-acre outer basin. The evidence was clear that no water could drain to the west until the level of the water in the 30-acre inner basin reached the level of the excavation. The evidence of the highway superintendent and the township clerk was that if the entire drainage from the 147-acre drainage basin was diverted to the west, the 15-inch culvert under the township road would be inadequate and that it would require a 42 or 48-inch culvert to carry the water, or that the water might wash out the road. There was no evidence of damage to the Lueken's land other than the fact that any water draining to the west would drain across it.

The defendant's engineer testified that the average rainfall in the area was 23 inches a year; that the normal run-off coefficient would be .25 or .35 depending upon soil and vegetation; and that the 30-acre inner basin would hold the run-off from 4 inches of rain in one hour without spilling over the excavation in the west

rim of the outer basin. He conceded, however, that if the water got high enough, it would go out the ditch in the west rim before it went to the east.

The evidence is clear that in the past water flowed out of the basin to the southeast in times of excessive rainfall. It is undisputed that if the water gets high enough in the basin it will now drain out to the west before it goes to the east because the excavation made by the defendant in the west rim of the basin is about 1 foot lower than the southeast rim. We conclude that the evidence established that damage will probably occur in the future, even though the evidence as to the frequency or extent of the anticipated damage may be speculative.

The water involved here is surface water. Diffused surface waters may be used in such manner as the owner of the land sees fit, provided that he does not concentrate them and dump them unlawfully on the land of another to his damage. He may change their course, store them, or reuse them, but he may divert them on the land of another only through depressions, draws, or other drainways as they were wont to flow in the state of nature. See, Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195; Muff v. Mahloch Farms Co., Inc., 184 Neb. 286, 167 N. W. 2d 73. It should be noted that the element of injury or damage has been an essential part of the rule at least since Clare v. County of Lancaster, 160 Neb. 622, 71 N. W. 2d 190. There is also statutory authority for landowners to drain land by constructing open ditches under specified conditions without liability for damages. See § 31-201, R. R. S. 1943.

The decree here made no finding as to any damage, present or future. The first numbered paragraph of the decree enjoins and restrains the defendant from allowing any water from the drainage basin, which formerly drained easterly, from draining westerly through the low place in the westerly rim of the drainage basin. The decree is not limited to drainage which results in

damage or injury, nor does it make any exception for drainage lawful by statute without liability for damage.

The second numbered paragraph of the decree requires the defendant to restore the low point on the westerly rim of the basin "to its former level as it existed prior to the excavation conducted by the defendant." That elevation was 1051.2 to 1053 feet. The evidence is clear that if the elevation on the west rim were even slightly higher than the 1047.5 elevation on the east rim, no water would drain from the basin to the west nor any damage occur. The decree, therefore, went further than was required and unduly interfered with the defendant's use of his own land.

The decree should be modified to provide that the defendant be enjoined and restrained from allowing any water from the basin or low areas on the southwest quarter of Section 17, Township 18, Range 8, that formerly drained easterly, from draining westerly through the low place in the westerly rim of the basin, to the damage or injury of the land owned or controlled by plaintiffs; except in a lawful manner as authorized by statute. The decree should be further modified to require the defendant to restore the low point on the westerly rim of the basin, in the full area excavated, to a firm, settled elevation of not less than 1048 feet.

In this case also, the defendant testified that he intended to irrigate his farm and that if there should ever be a flow of water to the west out of the drainage basin, he intended to dig a pit which would catch it. There was also testimony that the work done by the defendant here was in accordance with good conservation practices, but there was no finding by the trial court with respect to the effectiveness of any such proposed plan in protecting plaintiffs from injury or damage. Jurisdiction of the trial court should be retained to permit the defendant to apply for a modification of the decree conditional upon the completion of required and specified work by the defendant which will effectively

protect plaintiffs from injury and damage.  See Muff v. Mahloch Farms Co., Inc., *supra*.

The cause is remanded to the district court for entry of a decree modified in accordance with this opinion. Costs in this court are taxed to the appellee.

 AFFIRMED AS MODIFIED AND REMANDED WITH DIRECTIONS.