WALTER PETERS, APPELLEE, v. HARVEY LANGREHR ET AL.,
APPELLANTS.

197 N. W. 2d 698

Filed May 19, 1972.   No. 38280.

William G. Blackburn of Cunningham & Blackburn, for appellants.

Arthur C. Mayer of Mayer & Mayer, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and CLINTON, JJ., and COLWELL, District Judge.

CLINTON, J.

This is an action to permanently enjoin the defendants from discharging upon the land of the plaintiff waste irrigation waters. Defendants denied generally, but they also pled the statute of limitations, section 25-202, R. R. S. 1943, apparently claiming a prescriptive right to make the discharge, and also pled laches. After trial the court entered an order in which the defendants were "permanently enjoined from permitting excess irrigation water from defendants' irrigation system from running upon any portion of the plaintiff's premises." We modify the decree and remand the cause to the district court with directions.

The principal issues for decision on this appeal are: (1) The extent of the right, if any, of a landowner to discharge waste irrigation water into a drainway on his own land and through the drainway to neighboring land; and (2) whether the evidence justified relief by injunction.

We, of course, consider the matter de novo here. In so doing, however, where the evidence is in irreconcilable conflict we consider the fact that the trial court saw and heard the witnesses and must have accepted one version of the facts rather than the other. Town of Everett v. Teigeler, 162 Neb. 769, 77 N. W. 2d 467.

The defendants are the owners of the east half of the northwest quarter, and the southwest quarter of the northwest quarter of Section 26, Township 13 North, Range 9 West of the 6th P. M., in Howard County, Nebraska. The plaintiff owns most of the rest of Section 26 and his land abuts the entire boundary of the defendants' land on the south and east. Part of the southeast quarter of Section 26, owned by the plaintiff, is pastureland and it is the alleged ponding of waste irrigation waters at the outlet of a drain in this pastureland which gives rise to this litigation. The drain, ditch, or natural depression in the state of nature begins in the northwest quarter of Section 27, west of the defendants' tract, meanders easterly and southerly over the defendants' land, and enters the plaintiff's land on the northern boundary of the southwest quarter of Section 26. At that point, by reason of the improvements and changes made by the plaintiff, it flows straight south for a distance, then turns at a right angle to the east, passes through two culverts in the farmstead road, and empties into the pasture in question. Before the changes were made by the plaintiff 8 or 9 years before trial, the last portion of the drain, instead of turning at a right angle and going straight east, meandered southeasterly, passed under the farmstead road at a point further south through another culvert, and

joined a meandering continuation of the drain which then ran northeasterly across the plaintiff's pasture where it joined a larger drain on adjacent land to the east.

We find that the drainway or depression in its natural state does not qualify as a watercourse as defined in section 31-202, R. R. S. 1943, but does qualify as a natural depression or draw under the provisions of section 31-201, R. R. S. 1943, and it appears that it does ultimately pass into a watercourse known as Prairie Creek and thence into the Platte River. It is such a natural depression or draw as would entitle the defendants to have surface waters empty from their land. See, Bussell v. McClellan, 155 Neb. 875, 880, 54 N. W. 2d 81; Town of Everett v. Teigeler, *supra,* at p. 776. One of the questions which we must answer here is whether the discharge of excess irrigation water into the drainway comes within the right when the water discharges on the plaintiff's land and ponds there.

The evidence justifies the following findings: The defendants drilled their first irrigation well in 1949 and used it until 1955 when they replaced it with another. During that period there was some discharge of waste irrigation water by defendants into the drain and onto the plaintiff's land, but there is nothing to justify any finding as to the quantity passing onto the plaintiff's land, or the frequency, or the effect thereof. It does appear, however, that such discharge would be into the draw in its natural state rather than ending in the pasture where it now does by reason of the change in direction of the drain made by the plaintiff 8 or 9 years before trial. In 1955 the defendants drilled and began to use a third irrigation well. Excess irrigation waters, from what are designated in the record as fields 2, 3, and 4, all run into the drainway on the defendants' land. The defendant Harvey Langrehr testified that this occurred every year from 1955 on and that the excess water went onto the plaintiff's land, but

again there is nothing to justify any finding as to the frequency, quantity, or effect. In 1968 the defendant made some changes in his fields and in his irrigation methods. He straightened the natural drain where it passes through field 2 and placed the drain along the north edge of the field. He leveled a portion of this field, including the former site of the drainway, and began thereafter to irrigate by gravity irrigation the portion of field 2 which he had formerly watered by a sprinkler system. The evidence justifies a finding that these changes increased the quantity of waste irrigation water discharged into the drain.

The evidence justifies the finding that in the years 1969 and 1970 excess irrigation waters from fields 2, 3, and 4 passed into the drainway and onto the plaintiff's pastureland in quantities greater than ever before, resulting in the ponding of waters in the pastureland to the extent of an area of about 2 acres and up to a foot in depth; because his cattle stood in this water they developed a foot disease; and therefore he removed the cattle from the pasture for about 6 weeks in each of the years 1969 and 1970. It appears from the evidence that the plaintiff in these years asked the defendant to so irrigate as to prevent excessive flow of waters onto the plaintiff's land but the defendant indicated he would make no changes.

The defendant testified he could prevent the passage of all waste irrigation water from the plaintiff's land through the drainway by erecting two concrete catch basins 100 feet wide, 200 feet long, and 5 feet deep, and by the use of a pump and pipeline he could reuse this water on his own fields. He estimated the cost of such method at about $3,000. He further testified the plaintiff could cure the ponding of water on the pastureland at a cost of about $200 by cutting channels from the ponds to the natural drains which go on to the east. There is nothing in the record from which a determination can be made as to what the effect, if any,

on plaintiff's land would be if the waste water passed onto the plaintiff's land through the former natural drain into the pasture at the point further south where it would have gone before the changes made by plaintiff, except that it does appear it would in all probability have made unusable at times a portion of one cultivated field through which the drain in its natural state passed before the plaintiff made the right-angle turn in this drainway. We consider this change, for reasons which appear hereafter, irrelevant to the decision in the case.

In the recent case of Muff v. Mahloch Farms Co., Inc., 184 Neb. 286, 167 N. W. 2d 73, this court approached the question here presented to us but did not directly answer then because in that case the evidence did not show that the excess irrigation water which might in the future be cast upon the plaintiff's lands would be in other than negligible amounts and because the defendant agreed that if for any reason water was accumulated and cast upon the plaintiff's lands he would install a works and pump and reuse the water for irrigation purposes. The court in that case denied injunctive relief conditioned upon the defendant fulfilling his promise, if necessary, to construct a ditch and terrace to catch the waste water and install a pump to reuse it. It then authorized the lower court to make findings that the fulfillment of the promise was a condition upon which the defense to injunctive relief was founded. That case at least impliedly held that waste irrigation waters are not surface waters such as are contemplated to come within the protection afforded by section 31-201, R. R. S. 1943. Neither the common law nor civil law rules applicable to drainage apply to water artifically applied to the land. F. Trelease, Water Law, p. 95 (1967); Vantex Land & Development Co. v. Schnepf, 82 Ariz. 54, 308 P. 2d 254. See, also, § 46-635, R. R. S. 1943, defining ground water. An examination of the cases considered by this court in connection with the above-mentioned section 31-201, R. R. S. 1943, leads

us to believe that statute was not intended to include the discharge of waste irrigation waters in injurious quantities. Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195; Nickerson Township v. Adams, 185 Neb. 31, 173 N. W. 2d 387; Town of Everett v. Teigeler, *supra;* Muff v. Mahloch Farms Co., Inc., *supra.* We hold that the defendants have a right to discharge into the drainway only surface waters and only such waste irrigation waters as can be discharged and borne away without injury to the plaintiff's land. Provident Irr. Dist. v. Cecil, 126 Cal. App. 2d 13, 271 P. 2d 157. There is evidence in the record that in addition to surface waters which pass into the drainway some water from a spring in the draw on the defendants' land contributes to the flow. The quantity is not shown. The evidence also shows that some irrigation water from land further west enters the draw. None of these, however, appears to us to be a contributing factor to the incidents which give rise to plaintiff's claim.

We point out that the injunctive relief in cases of this kind is discretionary with the court and dependent upon the circumstances, nature, and extent of the threatened damage, and the probability of its continuance. Prosser, Law of Torts (4th Ed.), § 90, p. 602. Here we believe the trial court was justified in granting some relief to prevent the discharge of irrigation waters into the drainways in injurious quantities and which practice if continued could ripen into a prescriptive right. The defendants in this case have failed to prove a prescriptive right to discharge waste irrigation waters onto the plaintiff's land because they have failed to show the extent without material change of such alleged adverse user for the prescriptive period of 10 years. Hagadone v. Dawson County Irr. Dist., 136 Neb. 258, 285 N. W. 600; Kuhlmann v. Platte Valley Irr. Dist., 166 Neb. 493, 89 N. W. 2d 768.

As already indicated, we think the scope of the injunction granted is too broad. It prohibits absolutely

the discharge of waste irrigation waters onto the plaintiff's land at any time, in any quantity whether injurious or not, and at any point. It is not just limited to the waters which pass into the drainway and then onto the plaintiff's land in injurious quantities. The evidence shows that at one time in 1969 irrigation waters from field 1, which we have not heretofore mentioned and which does not empty into the drainway, broke through a dike and passed onto the plaintiff's field to the east. The defendants at that time at the plaintiff's request built a better dike. There is no threat of continuance. Injunctive relief is not justified as to this possible threat of damage.

We recognize the possibility that implementation of justified relief may depend upon any proposals the defendants may have to prevent the continued recurrence of the damage. See, Nickerson Township v. Adams, *supra;* Muff v. Mahloch Farms Co., Inc., *supra.*

We reverse the judgment and remand the cause to the district court for proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.